UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID STREEVER,<br><br>      Plaintiff,<br><br>   v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, et al.,<br><br>      Defendants. | Civil Action No. 26-2356 (RC) |

**COMBINED MOTION TO DISMISS THE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3), TO TRANSFER VENUE, TO HOLD IN ABEYANCE BRIEFING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, AND <u>FOR EXTENSION OF TIME WITH A MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................ 1

Introduction ....................................................................................................................... 2

Background ......................................................................................................................... 2

    I.    Factual Background ........................................................................................... 2

    II.   Procedural History ............................................................................................ 5

Argument ............................................................................................................................ 6

    I.    With Venue Improper, the Court Should Dismiss the Complaint and Deny the Motion for Preliminary Injunction ................................................................... 6

        A.    Rule 12(b)(3) Standard ........................................................................ 6

        B.    No Proper Defendant Resides Here, So Venue Is Improper ...................... 7

    II.   The Court Should Transfer This Case to the Western District of New York ......... 9

        A.    Legal Standards for Transfer Under 28 U.S.C. § 1404(a) .......................... 9

        B.    This Case Could Have Been Brought in the Western District of New York ...................................................................................................... 10

        C.    The Private Factors Support Transfer ....................................................... 11

        D.    The Public Interest Factors Favor Transfer ............................................. 17

    III.  Request to Hold Preliminary Injunction Briefing in Abeyance Pending Decision on the Motion to Transfer and Request for Extension of Time ........................... 20

Conclusion ......................................................................................................................... 24

Defendants respectfully request that the Court dismiss Plaintiff David Streever's Complaint for improper venue under Federal Rule of Civil Procedure ("Rule") 12(b)(3), or, in the alternative, transfer this case to the Western District of New York pursuant to 28 U.S.C. § 1406(a).

Furthermore, Defendants respectfully further request that the Court:

- Hold in abeyance Defendants' response to Plaintiff David Streever's Motion for Preliminary Injunction at ECF No. 9 pending the Court's decision on this motion to dismiss under Rule 12(b)(3) or, in the alternative, motion to transfer;

- Grant Defendants a seven-day extension of time to respond to the motion for preliminary injunction after the Court's decision on this Motion to Transfer; and

- Grant Defendants leave to later raise other Rule 12 defenses to the Complaint.

The Parties conferred pursuant to Local Civil Rule 7(m).  Streever opposes all of these forms of relief.  For scheduling purposes, Plaintiff agrees to file his response to this motion by August 4, 2026, and that Defendants will file their reply in support of this motion by August 11, 2026.

A proposed order is attached.

## INTRODUCTION

Plaintiff David Streever sues, concerned for his First Amendment rights.  He misplaced venue here, however.  Streever resides in Rochester, New York.  The acts allegedly chilling his speech occurred in New York.  Most of the Defendants work in New York.  Relevant witnesses live there too.  Because this District has no connection to this dispute, dismissal for improper venue is required.  Alternatively, the Court could transfer venue to the Western District of New York.

## BACKGROUND

### I.    Factual Background

"A detailed statement of the facts is not necessary to comprehend the significant local interests at stake requiring transfer of this action to a federal court in the State of" New York.  *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 355 (D.D.C. 2014).

All of these alleged actions occurred in the Western or Southern Districts of New York. Put simply, Plaintiff has not alleged any meaningful contacts to the District of Columbia.

The sole Plaintiff, Streever, resides in Rochester, New York. Compl. ¶ 20.[1] He "sent a three-paragraph email (Exhibit 1) to Todd M. Lyons," ICE's then-Senior Official Performing the Duties of the Director of ICE, "decrying the conduct of ICE's agents, drawing comparisons to Nazi Germany, and predicting Lyons' conscience would haunt him." Compl. ¶ 5. *See also* Pl. Ex. 1 (Jan. 26, 2026, email). "Five months later," Streever alleges, ICE agents "embarked on a trip across New York" to visit him. Compl. ¶ 6. In New York, "ICE Special Agents David Brodie and Abbi Henry visited Streever's house in Rochester, learning from his wife that Streever was on a trip to Northern Europe with his seven-year-old daughter." *Id.* ¶ 7.

At Streever's home in Rochester, investigating whether Streever constituted a threat, "[t]he agents told Streever's wife that he 'may or may not have sent an email threatening' the Director of ICE." *Id.* ¶ 7. The Complaint includes photos of Defendants Brodie and Henry on Streever's porch on June 23, 2026. *Id.* ¶¶ 71–73. The Complaint describes the agents' conversation with Streever's wife, which took place in person. *Id.* ¶¶ 74–78.

Streever alleges that ICE agents left a "Warning Notice" for him at his Rochester home with his wife. *Id.* ¶¶ 79–81. *See also* Pl. Ex. 2 (hereafter the "Notice"). This prophylactic warning served to put Streever on notice about the law. Pl. Ex. 2.

The Notice stated that follow-up about the Notice should be handled locally. Specifically, the Warning Notice stated, "If you wish to discuss this Notice and its contents further, please contact the undersigned Special Agent who served you with this Warning Notice or the local OPR

---

[1] Although Plaintiff filed his address under seal (Compl. at 1 n.1; ECF No. 2), the Complaint specifies that "Plaintiff David Streever ('Streever') is a citizen of the United States and a resident of Rochester, New York." Compl. ¶ 20.

field office." *Id.*  The reference to "the local OPR field office" meant ICE's Office of Professional Responsibility.  *Id.*  The ICE OPR office serving New York is in Fairfax, Virginia.[2]

Also in New York, "DHS or ICE sent a third agent to confront Streever" in New York City upon his return from Europe a few days later, on June 25, 2026.  *Id.* ¶¶ 88–90.  Defendant ICE Special Agent Trevor Pitts "of the Jamaica, New York, office of Homeland Security Investigations of DHS" attempted to contract Streever in person at his hotel in New York City, but Streever did not speak with him.  *Id.* ¶¶ 91–93.  "Also that evening, Streever also received two voicemails from callers—one male, one female—who did not provide their names and identified themselves only as "Homeland Security Investigations."  *Id.* ¶ 95.  The Complaint also describes Streever and his daughter's Amtrak ride from New York City to Rochester.  *Id.* ¶ 97.

Most of the Defendants have New York ties.  Streever sued Special Agent Pitts, whom a "business card identified" as an agent "of the Jamaica, New York, office of Homeland Security Investigations of DHS."  *Id.* ¶ 93.  Defendant Special Agent John Doe, the special agent in charge of ICE's OPR East Office, allegedly "oversees operations of OPR in the State of New York."  *Id.* ¶¶ 38–40.  Streever also sued Special Agents David Brodie, Abbi Henry, and Trevor J. Pitts, alleging, that they are "among the ICE officers assigned (among other things) to locate and confront people about their speech concerning ICE officials, including in the State of New York, using the 'WARNING NOTICE' documents described in this Complaint."  *Id.* ¶¶ 41–44.

The Complaint names another person who received a "Warning Notice"—a Syracuse, New York resident.  *Id.* ¶¶ 99–103.  Allegedly, two of the same people named as Defendants here—

---

[2]    ICE    Field    Offices,    Office    of    Professional    Responsibility, https://www.ice.gov/contact/field-offices?state=All&office=13&keyword= (last accessed July 7, 2026).  "The Court may take judicial notice of information posted on official public websites of government agencies."  *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 (D.D.C. 2022) (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)).

Special Agents Brodie and Henry—served the Warning Notice on this other person. *Id.* ¶ 101. And the Complaint includes allegations about another person experiencing alleged retaliation for speech activities at the hands of other DHS or ICE officials—not the named Defendants. *Id.* ¶¶ 60–63.

## II.    **Procedural History**

Streever sued on July 6, 2026. Compl. (ECF No. 1). He filed a two-count Verified Complaint alleging First Amendment violations: a violation of his right to free speech and to petition (Count I) and a retaliation claim (Count II). *Id.* ¶¶ 114–150.

As relief, Streever seeks four kinds of declaratory relief: (1) that his speech is protected by the Speech and (2) Petition Clauses of the First Amendment; (3) that "Defendants' issuance of 'WARNING NOTICE' documents is sufficient to chill a person of ordinary firmness from engaging in expression protected by the First Amendment"; and (4) that "Defendants' acts of coercion and retaliation, as described in this Complaint, violate Streever's First Amendment rights." *Id.* at 24 ("Prayer for Relief"). The Complaint also seeks an injunction barring "Defendants, their officers, agents, servants, and employees, and any persons or entities acting in concert with Defendants, from taking any further actions, formal or informal, to coerce, threaten, retaliate against, or intimate repercussions directly or indirectly to Plaintiff Streever for his protected speech and petitioning activity (including without limitation the speech and petitioning activity in his January 26, 2026 email) in violation of his constitutional rights," overlapping as both preliminary and permanent relief. *Id.* The Complaint also seeks to enjoin Defendants and anyone acting in concert with them "from taking any further steps in reliance on Streever's receipt of the 'WARNING NOTICE,'" overlapping as both preliminary and permanent relief, plus attorneys' fees and costs. *Id.* at 24-25. Streever does not seek money damages.

One day after suing, Streever moved for a preliminary injunction.  ECF No. 9.  As relief, Streever seeks a preliminary injunction of the same kind of injunctive relief sought in the Complaint.  ECF No. 9-3.

## ARGUMENT

**I.    With Venue Improper, the Court Should Dismiss the Complaint and Deny the Motion for Preliminary Injunction**

### A.    Rule 12(b)(3) Standard

A court may dismiss a complaint for improper venue under Rule 12(b)(3).  As stated by this Court:

> the burden remains on the plaintiff to prove that venue is proper when an objection is raised, "since it is the plaintiff's obligation to institute the action in a permissible forum."  *McCain v. Bank of America,* 13 F.Supp.3d 45, 51, 2014 WL 334196, at *3, No. 13–1418, 2014 U.S. Dist. LEXIS 11499, at * 10 (Jan. 30, 2014); *see also* 14D Charles Alan Wright et al., Federal Practice and Procedure § 3826 (3d ed. 2012) ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue.").  In determining if venue is proper, courts must accept the plaintiff's well-pled factual allegations as true, resolve any factual conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the plaintiff.  *See Hunter v. Johanns,* 517 F.Supp.2d 340, 342 (D.D.C.2007); *Davis v. Am. Soc'y of Civil Eng'rs,* 290 F.Supp.2d 116, 121 (D.D.C.2003).

*Williams v. Wells Fargo Bank N.A.*, 53 F. Supp. 3d 33, 36–37 (D.D.C. 2014).  "If venue is improper, district courts are required to 'dismiss, or if it be in the interest of justice, transfer' a case pursuant to the federal venue statute, 28 U.S.C. § 1406(a)."  *Id.* at 37; *see also Liu v. Mayorkas*, 737 F. Supp. 3d 1, 4 (D.D.C. 2024) (Section 1406(a) is "controlling when the original venue is improper").  "When deciding a Rule 12(b)(3) motion to dismiss for lack of venue, the court may consider extrinsic evidence."  *Cooper v. Farmers New Century Ins. Co.*, 593 F.Supp.2d 14, 18 (D.D.C. 2008).  "The Court may decide a venue issue before deciding whether it has subject matter jurisdiction."  *Su v. Dept of Just.*, Civ. A. No. 25-3412 (TNM), 2026 WL 904997, at *2 n.2 (D.D.C. Apr. 2, 2026) (first citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431

(2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."), then citing *Brodt v. Cnty. of Harford*, 10 F. Supp. 3d 198, 200 (D.D.C. 2014)).

### B.    No Proper Defendant Resides Here, So Venue Is Improper

The Court should reject Plaintiff's effort to "manufacture" venue here.  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).  When suing the federal government, venue is proper where: (1) "a defendant in the action resides"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated"; or (3) "the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).  None apply.

First, no proper defendant resides in the District of Columbia.  Although DHS Secretary Markwayne Mullin and David Venturella, Senior Official Performing the Duties of the Director of ICE, reside here for official capacity claims, "[i]n this circuit,' home to many federal agencies and officials, courts must scrutinize 'venue to guard against the danger that a plaintiff might manufacture venue in the District of Columbia.'"  *Su*, 2026 WL 904997, at *3 (D.D.C. Apr. 2, 2026) (quoting *Cameron*, 983 F.2d at 256).  "By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere."  *Cameron*, 983 F.2d at 256.  "Indeed, if 'the only real connection the lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the administrative process, venue is not appropriate in the District of Columbia.'"  *Su*, 2026 WL 904997, at *3 (quoting *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008)).  In *Su*, the Court found venue improper even though one of the defendants, the Department of Justice, resides in the District, explaining that "DOJ does not even have that degree of a 'real connection' to Su's case."  *Id.*  In *Simpson*, the Court found venue was improper because even though the Bureau of

Prisons and certain agency officials resided in Washington, D.C., all of the plaintiff's claims concerned conditions at his prison in Pennsylvania, including his pending claims for injunctive relief. *Simpson v. Fed. Bureau of Prisons*, Civ. A. No. 19-3173 (CJN), 2020 WL 95814, at *4 (D.D.C. Jan. 8, 2020).

No allegations establish a real connection between this lawsuit and either Secretary Mullin or ICE's Venturella. The lawsuit concerns the acts of ICE special agents in New York. Streever includes no factual allegations about Mullin or Venturella. *See generally* Compl. Same for Jennifer Fenton, ICE's Associate Director of the Office of Professional Responsibility. *Id.* ¶ 35. Allegations about their general legal authorities do not create a real connection to this case. The claims against Mullin, Venturella, and Fenton are subject to dismissal for failure to state a claim for lack of personal involvement because "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). So Mullin, Venturella, and Fenton should not be considered proper defendants in the venue analysis.

Moreover, none of the events "giving rise to" Streever's claim occurred here. Courts dismiss for improper venue when plaintiff fails to show that a "substantial part of the events or omissions giving rise to the claim" occurred in the District. *Su*, 2026 WL 904997, at *3 (quoting *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 190 (D.D.C. 2018) (emphasis in original) (cleaned up). "Peripheral and tangential events occurring in the district will not establish venue." *Id.* In *Cockrum*, the Court found venue improper when those "plaintiffs rel[ied] on vague allegations of conspiratorial activity possibly occurring in the District" and when "Plaintiffs' own allegations suggest that defendants largely orchestrated the alleged conspiracies from New York[.]" *Cockrum*, 319 F. Supp. 3d at 190. Everything alleged here occurred in New

- 8 -

York.  Furthermore, Streever pleads no policy or practice allegations emanating from headquarters in Washington.  Even if he did, speculative policy or practice allegations cannot establish proper venue.  *See Cockrum*, 319 F. Supp. 3d at 190; *Su*, 2026 WL 904997, at *3 (for venue, no "substantial part of the events or omission giving rise to the claim" when "decades ago, the regulation [plaintiff] challenges was promulgated in Washington").

Finally, Streever resides in Rochester, New York, not the District of Columbia.  Compl. ¶ 20.  So none of the three grounds for proper venue apply.  *See* 28 U.S.C. § 1391(e)(1).  "With neither a plaintiff, nor a properly named defendant, nor a claim based on events that occurred in this district, venue is improper."  *Su*, 2026 WL 904997, at *1.

Thus, the Court should dismiss the Complaint for improper venue under Rule 12(b)(3).  And because the Court should dismiss the Complaint, the Court should also deny the motion for preliminary injunction.  *See Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 128 (D.D.C. 2008) (in the alternative to dismissing under 12(b)(3) for improper venue, transferring under 28 U.S.C. § 1404(a) and so denying motion for preliminary injunction without prejudice).  Because venue is improper in this District, this Court may either dismiss, "or if it be in the interests of justice, transfer [this] case to any district or division in which it could have been brought."  *Brodt*, 10 F. Supp. 3d at 203 (quoting 28 U.S.C. § 1406(a)).

**II.     The Court Should Transfer This Case to the Western District of New York**

Even if venue properly lay here, the Court should transfer the case under 28 U.S.C. § 1404(a).

**A.     Legal Standards for Transfer Under 28 U.S.C. § 1404(a)**

A case may be transferred to any district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an

'individualized, case-by-case consideration of convenience and fairness.'" *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "Thus, transfer . . . must . . . be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute." *Id.* (internal quotation marks omitted). "The movant bears the burden of persuasion that transfer of an action is proper." *Id.*

"Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). Venue is not appropriate in the District of Columbia when the only "real connection" the lawsuit has to the District of Columbia is that a federal agency headquartered here oversees the administrative process at issue. *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008).

This case presents a controversy with no meaningful connection to the District of Columbia. As such, the Court should transfer this case to the Western District of New York, the district where the alleged acts took place, where Plaintiff resides, and the state where many of the Defendants work. *See* 28 U.S.C. § 1404(a).

**B.      This Case Could Have Been Brought in the Western District of New York**

"The first step in resolving a motion for transfer of venue under § 1404(a) is to determine whether the proposed transferee district is one where the action 'might have been brought.'" *Ctr. for Env't Sci.*, 75 F. Supp. 3d at 356. "In actions raising a federal question by naming as a defendant a federal agency or United States official in his or her official capacity, venue is proper in any judicial district where (1) a defendant in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject

of the action is situated; or (3) a plaintiff resides if no real property is involved in the action." *Id.* (quoting 28 U.S.C. § 1391(e)(1)) (internal quotation marks omitted).

Streever resides in Rochester, New York.  Compl. ¶ 20.  The Court may take judicial notice that Rochester, New York is in the Western District of New York.  *See* 28 U.S.C. § 112(d).  What's more, Streever alleges that the Government agents interacted with his wife at their Rochester home, visited Streever at his hotel in New York City, attempted meet with him on his return travel from New York City to Rochester, and called his phone and left him voicemails while he was in New York, so "a substantial part of events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(e)(1).  Thus, this action "might have been brought" in the Western District of New York.  *Ctr. for Env't Sci.*, 75 F. Supp. 3d at 356.  That satisfies step one.

### C.    The Private Factors Support Transfer

At step two, the Court must examine whether the case is more conveniently handled in the Western District of New York rather than this District: "which forum best serves the convenience of the parties and witnesses, and the interest of justice." *Ctr. for Env't Sci.*, 75 F. Supp. 3d at 356. This inquiry requires weighing the "private and public interest[ ] factors." *Id.*; *see also McAfee LLC v. USCIS*, Civ. A. No. 19-2981 (DLF), 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019).

In weighing transfer, "the Court considers the following private interest factors: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties, (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." *Bourdon v. Dep't of Homeland Sec.,* 235 F. Supp. 3d 298, 305 (D.D.C. 2017); *see also Ctr. for Env't Sci.*, 75 F. Supp. 3d at 357.

*Private Factor One.* Streever's choice of forum is afforded minimal weight because the District of Columbia is not his home forum and the District of Columbia has no factual ties to this case. *See, e.g.*, *Bourdon,* 235 F. Supp. 3d at 305 ("Although the plaintiff's choice of forum is ordinarily entitled to deference, that choice is conferred considerably less deference when it is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to plaintiff's home forum"); *Ctr. for Env't Sci.*, 75 F. Supp. 3d at 357 ("any deference given to the plaintiff's choice of forum is minimized where the plaintiff's "choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter.""); *Pasem v. USCIS*, Civ. A. No. 20-244  (CRC), 2020 WL 2514749, at *4 (D.D.C. May 15, 2020) (concluding that deference to a plaintiff's choice of forum ""is minimized when the forum chosen is not the plaintiff's home forum"") (quoting *Sallyport Global Servs., Ltd. v. Arken Int'l, LLC*, 78 F. Supp. 3d 369, 373 (D.D.C. 2015)); *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 333 (D.D.C. 2020) ("deference to [plaintiff's] choice is limited because [p]laintiff is not a resident of the District of Columbia and this action lacks meaningful ties to the District of Columbia"); *Aftab v. Gonzalez,* 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (plaintiff's "choice of this district as a forum commands diminished deference" where "the claim involves identifiable relevant events occurring in the transferee district and virtually none in this district"). Because any allegation of involvement of a District of Columbia-based defendant, at best, "relies on inference," then "[u]nder such circumstances, [Streever's] choice of forum commands diminished deference, and carries little weight in the transfer analysis." *Joslin v. Dep't of the Interior*, Civ. A. No. 26-0576 (SLS), 2026 WL 686155, at *4 (D.D.C. Mar. 11, 2026).

*Private Factor Two*. On Defendants' choice of forum, Defendants seek to transfer this action to Plaintiff's home District. Streever "cannot reasonably claim to be inconvenienced by

litigating in [his] home forum." *Wolfram Alpha*, 490 F. Supp. 3d at 333 (quoting *Aishat v. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018). "Indeed, when the forum preferred by the plaintiff is not his home forum, and the defendant prefers the plaintiff's home forum, there is little reason to defer to the plaintiff's preference." *Hale v. Bureau of Prisons*, Civ. A. No. 21-1469 (JEB), 2023 WL 2755413, at *5 (D.D.C. Apr. 3, 2023) (quoting *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018)); *see also Tower Labs, Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018) (transferring action to plaintiff's home forum).

*Private Factor Three.* The private interest factors that are "of predominant importance" are those demonstrating that a plaintiff's claims arose in another District. *Bourdon*, 235 F. Supp. 3d at 305; *see also, e.g., Wolfram Alpha*, 490 F. Supp. 3d at 333 ("The location of activities giving rise to the action weighs heavily in favor of transfer"). "Transfer is favored when 'the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum.'" *Correll v. U.S. Patent & Trademark Off.*, Civ. A. No. 25-1169 (SLS), 2026 WL 310024, at *3 (D.D.C. Feb. 5, 2026) (quoting *SEC v. Musk*, Civ. A. No. 25-105 (SLS), 2025 WL 2803858, at *2 (D.D.C. Oct. 2, 2025)).

The events alleged in the Complaint occurred in New York. Streever alleges that the Government agents interacted with his wife at their Rochester home, visited Streever at his hotel in New York City, attempted meet with him on his return travel from New York City to Rochester, and called his phone and left him voicemails while he was in New York.

The claims do not arise in the District of Columbia just because a Plaintiff sues high-ranking government officials. As the D.C. Circuit stated, a plaintiff cannot "manufacture venue in the District of Columbia [ ] [b]y naming high-ranking government officials as Defendants." *Cameron*, 983 F.2d at 256. In *Cameron*, although the plaintiff named as defendants the Attorney

- 13 -

General and head of the Bureau of Prisons, venue was improper in the District of Columbia because the plaintiff "did not allege a single rule or policy emanating from Washington that had affected his case," and because any "assumption that policy decisions made in Washington ultimately affected [his] treatment at Terre Haute" was "wholly unsubstantiated." *Id*. at 257.   As further explained,

> It is "settled law" in this District that "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative." *State v. U.S. Army Corps of Engineers*, 304 F. Supp. 3d 56, 64 (D.D.C. 2018) (quoting *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002)).   "[I]nstead, there must be a 'real connection between the District of Columbia and this litigation' that goes beyond the presence of federal agency officials who are 'generally regulating and overseeing the [administrative] process.'"   *Id.* (quoting *Shawnee Tribe*, 298 F. Supp. 2d at 26) (alteration in original).

*Agofsky v. Bureau of Prisons*, Civ. A. No. 23-1511 (TSC), 2024 WL 402949, at *4 (D.D.C. Feb. 2, 2024).   In *Agofsky*, the Court transferred when "Plaintiff has not shown more than general regulation and oversight by [the Bureau of Prisons]."   *Id.*   Even when a federal agency "has had some role in formulating the policy that was applied by a local agency office, this does not alone support venue when the claims are centered on the decision of a local agency office."   *Intrepid Potash-New Mexico, LLC v. Dep't of Interior*, 669 F. Supp. 2d 88, 96 (D.D.C. 2009).   Courts in this District have routinely transferred civil rights complaints where the events at issue took place in other states, even where the plaintiff named District of Columbia-based federal agencies as defendants.   *See, e.g., Northern v. Dep't of Health and Human Servs.*, Civ. A. No. 25-2459 (CJN), 2025 WL 3114336, at *2 (D.D.C. Nov. 6, 2025) (transferring case alleging claims grounded in procedural challenges to filing civil rights complaints about events at a hospital located outside of the District of Columbia); *see also Cameron*, 983 F.2d at 256 (transferring case alleging Eighth Amendment claims); *Lopez v. United States*, Civ. A. No. 25-2408 (TJK), 2025 WL 2193001, at *2 (D.D.C. Aug. 1, 2025) ("though Plaintiffs note that some high-ranking federal officials in the

- 14 -

District may have had some role in [agency decisions], [i]t is settled law that 'mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative.") (internal quotation marks omitted); *Vista Machining Co. v. Mattis*, Civ. A. No. 18-1819 (CRC), 2018 WL 11260703, at *2 (D.D.C. Nov. 15, 2018) ("when an uninvolved agency head is the linchpin for laying venue in the District of Columbia, plaintiff's choice of forum matters very little in the transfer calculus"); *Dawoud v. Dep't of Homeland Sec.*, Civ. A. No. 24-2054 (RDM), 2024 WL 4957228, at *4 (D.D.C. Dec. 3, 2024) (speculation about "unidentified national immigration policies" from Washington insufficient to establish venue).

In another case, the Court in *Alaska v. Dep't of the Interior* transferred the case despite a pending preliminary-injunction motion and despite the Plaintiff's argument that the challenged federal decisions were made by officials in Washington, D.C.; the Court explained that such actions by Washington-based officials are not "magic acts that somehow transform a transferable case into an un-transferable one." Civ. A. No. 25-0330 (PLF), 2025 WL 1730193, at *1, *8-9, *17-22 (D.D.C. June 23, 2025) (collecting cases).

Notably, Streever confines his allegations of venue to one paragraph of mere legal conclusions entitled to no weight: "Venue is proper under 28 U.S.C. § 1391(e)(1) because one or more of the Defendants is an officer of the United States or an agency of the United States and resides in the District of Columbia. Venue is also proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the District. *Id.*" Compl. ¶ 19. "Here, permitting venue simply because [DHS and ICE] [are] headquartered in the District would ignore that virtually all alleged acts or omissions giving rise to Plaintiff's preliminary injunction and . . . claims occurred largely in" New York. *Pinson v. U.S. Dep't of Just.*, 74 F. Supp. 3d 283, 293 (D.D.C. 2014). Even had Streever alleged that Defendants in Washington, D.C. made

decisions affecting him (which he has not), the predominantly New York nature of this case compels transfer.

*Private Factors Four, Five, and Six.*  The other private factors likewise favor transfer: (4) "the convenience of the parties,"; (5) "the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora,"; and (6) "the ease of access to sources of proof." *Ctr. for Env't Sci.*, 75 F. Supp. 3d at 357.  For claims that arose "primarily" in another district, that "District likely will be more convenient for potential witnesses and evidence." *McAfee*, 2019 WL 6051559, at \*2.  If a court holds a hearing in this case, the Western District of New York makes the most sense—particularly before a judge in its Rochester Division.  The plaintiff is there.  His wife, who witnessed some events, is there.  Their neighbors, who may have seen the agents visit their house, are in Rochester too.  Defendant Special Agent Pitts works in the DHS Jamaica, New York office.  Compl. ¶ 93. Defendant Special Agent John Doe is the special agent in charge of ICE's OPR East Office, whom Streever alleged "oversees operations of OPR in the State of New York." *Id.* ¶¶ 38–40.  Likewise, Defendants Special Agents David Brodie, Abbi Henry, and Trevor J. Pitts are "among the ICE officers assigned (among other things) to locate and confront people about their speech concerning ICE officials, including in the State of New York, using the 'WARNING NOTICE' documents described in this Complaint." *Id.* ¶¶ 41–44.  What's more, Streever identifies a Syracuse, New York resident whom Defendants Brodie and Henry allegedly confronted with a similar Warning Notice. *Id.*  ¶¶ 9, 100.  Plaintiff may offer this Syracuse resident as a witness to show a potential chilling effect of these Notices.  And Defendants may offer other witnesses to those events in New York as well.

It is far more convenient for these witnesses to appear in court in the Western District of New York than miles away in the District of Columbia. If this case requires discovery, then depositions of these New-York based witnesses makes much more sense in New York. Thus, transfer will conserve resources overall. And, also favoring transfer, those witnesses and evidence are "far beyond the Court's 100-mile limit of the subpoena power of this Court." *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995) (citing Fed. R. Civ. P. 45).

Accordingly, the private interest factors in this case weigh strongly in favor of transfer.

**D.      The Public Interest Factors Favor Transfer**

There are three public interest factors that the Court must also consider in assessing a request to transfer:  "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Bourdon*, 235 F. Supp. 3d at 308 (quotation marks omitted).

*Public Interest Factor One.*  This factor is neutral because all federal courts know the law. *See Correll*, 2026 WL 310024, at *3 ("All federal courts are presumed equally familiar with the federal statutes and constitutional provisions at issue here.") (citation modified).  Because Plaintiff pursues federal claims requiring interpretation of federal law, "[t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims." *Wolfram Alpha*, 490 F. Supp. 3d at 334 (citation modified).

*Public Interest Factor Two*.  This Court has a more congested docket than the Western District of New York.  *See* United States Courts, "Federal Court Management Statistics Profiles," (During    the    12-Month    Period    Ending    December    31,    2025)    available    at https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-december-2025 (last accessed July 7, 2026).  In the

Western District of New York, there were 3,871 cases pending as of December 31, 2025.  From filing to disposition, civil cases take a median of 9.9 months.  From filing to trial, they take 55.0 months.  In the District of Columbia, there are nearly double as many cases pending: 6,964.  From filing to disposition, civil cases take a median of 7.3 months.  From filing to trial, they take 52.1 months.

Furthermore, as this Court well knows, litigants have flooded this Court with emergency motions for temporary restraining orders and preliminary injunctions at an unending pace since January 2025.  *See Wolfram Alpha*, 490 F. Supp. 3d at 336-37 (consideration "of court congestion . . . may be influenced by additional factors").  Other federal courts are just as capable of handling those emergency requests for relief.

*Public Interest Factor Three.*  "The interest in deciding local controversies at home is the public interest factor of most importance in this case."  *Bourdon*, 235 F.Supp.3d at 308; *see also, e.g., Wolfram Alpha*, 490 F. Supp. 3d at 338-39 ("perhaps most important amongst the public factors, the local interest in deciding local controversies at home factor weighs in favor of transfer to" a plaintiff's home district).  To determine whether the case presents a local controversy, courts "consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy[;] . . . and whether there was personal involvement by a District of Columbia official."  *Bourdon*, 235 F. Supp. 3d at 308.

This is a New York controversy.  *See Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 58 (D.D.C. 2012) (factor favored transfer "[b]ecause any potential impacts are to be felt locally"); *see also McAfee*, 2019 WL 6051559, at *1 (holding that the local interest prong favors transfer because "courts [have] a local interest in having localized

- 18 -

controversies decided at home, including even controversies requiring judicial review of an administrative decision") (quotation marks omitted).  Thus, in this matter, the local interest factor, which is "most importan[t]," weighs heavily in favor of transfer.  *Bourdon*, 235 F. Supp. 3d at 308.

Linked to the importance of deciding local issues close to home, the potential for injunctive restraint on Government officials in New York favors transfer too.  This goes to the enforceability of a potential preliminary injunction or even a judgment.  "This factor can favor transfer when a defendant resides in the transferee forum and plaintiff seeks injunctive relief that will restrain his activities there."  *Perma-Liner Indus., LLC v. D'Hulster*, 2021 WL 951185, at \*4 (D. Del. Mar. 12, 2021).  Here, Streever seeks an injunction not just against the named Defendants, but also "their officers, agents, servants, and employees, and any persons or entities acting in concert with Defendants."  Compl. at 24 ("Prayer for Relief").  Given that Streever seeks to prevent interference with his speech, and that he lives in the Western District of New York, he, in effect, seeks an injunction against Government agents in New York.  Such an order more appropriately issues (if at all) from a federal court in New York.

Relatedly, the possibility of future litigation also encourages transfer.  *See Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1021 (N.D. Ill. 1998) (request for injunctive relief favors transfer to Florida because "the Florida court would be 'closer to the action'" and, therefore, "the better forum to enforce and monitor any injunctive relief awarded").  If a federal court entered an injunction sought by Streever, then a federal court located in the district where the injunction is to be primarily enforced is better positioned to administer the injunction.  And, in the (unlikely) event there is a need to hold enforcement or contempt proceedings for alleged violations of any injunction, those proceedings are more appropriately handled by a court local to Streever and those parties subject to the injunction—not a court miles away in the District

- 19 -

of Columbia. On balance, the Rochester Division (where Streever lives) of the Western District of New York is the most appropriate court for that.

Finally, a pending motion for preliminary injunctive relief does not prevent this Court from resolving transfer first. Courts in this District have rejected the argument that a Plaintiff can force adjudication of emergency relief before venue is resolved merely by seeking a temporary restraining order or preliminary injunction. In *Neighbors Against Bison Slaughter v. National Park Service*, the plaintiffs moved for temporary and preliminary injunctive relief to stop a bison hunt in Montana, and the government defendants moved to transfer the case to the District of Montana under 28 U.S.C. § 1404(a). Civ. A. No. 19-3144 (BAH), 2019 WL 6035356, at *1, *1 n.2 (D.D.C. Nov. 14, 2019). The Court rejected the plaintiffs' argument that 28 U.S.C. § 1657(a) required their emergency motion to be decided first, explaining that the statute "prescribes the kinds of motions that should receive expedited consideration, not the order in which motions must be decided." *Id*. at *1 n.2. The Court therefore considered transfer first, denied the temporary restraining order, and transferred the pending preliminary-injunction motion with the case. *Id.* at *7—8. Indeed, many times, this Court has transferred newly-filed cases with a pending motion for a preliminary injunction. *See Agofsky*, 2024 WL 402949, at *1 (granting motion to transfer, deferring decision on motion for preliminary injunction to transferee court); *Alaska*, 2025 WL 1730193, at *1 (same); *Lopez*, 2025 WL 2193001, at *2 (same).

At bottom, given the local interests in New York and absence of connection here, this Court should transfer the case to the Western District of New York in the interests of justice.

### III.    Request to Hold Preliminary Injunction Briefing in Abeyance Pending Decision on the Motion to Transfer and Request for Extension of Time

Defendants respectfully request that the Court holding in abeyance briefing on Plaintiff's Motion for Preliminary Injunction pending resolution of Defendant's Motion to Transfer. The

- 20 -

Court possesses inherent authority to administer the scheduling of its cases. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for [the Court], for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Staying a deadline, changing deadlines, and setting briefing schedules are all well-within a court's discretion. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The Court must consider the circumstances in this case, "weigh[ing] competing interests and maintain[ing] an even balance." *Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 137 (D.D.C. 2016). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). In addition, good cause supports extending Defendants' deadline to raise other Rule 12(b) defenses given that Defendants here raise only a motion to dismiss for improper venue along with the motion to transfer and Defendants' ordinary time to respond to the Complaint does not run for almost a month and a half.

The staggered briefing schedule proposed above furthers the interests of justice in these circumstances. The transfer question implicates which Circuit's law will apply: the Second Circuit or the D.C. Circuit. Moreover, if the case is transferred to the Western District of New York, Government counsel's work there on the briefing will deepen their familiarity with the case and applicable law, making them well-equipped to answer the Court's questions at a hearing (if any) and to efficiently advance the litigation. In short, the requested relief would promote the efficient and orderly disposition of this litigation.

Courts have transferred cases without requiring a response to a motion for preliminary injunction before the transfer. *See New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 97–98 (D.D.C. 2010) (granting transfer under 28 U.S.C. § 1404, then granting extension of time to respond to motion for preliminary injunction); *Perma-liner Indus., LLC v. D'hulster*, Civ. A. No. 20-409-RGA, 2021 WL 951185, at *1 (D. Del. Mar. 12, 2021) (when defendant moved to transfer and to stay briefing on motion for preliminary injunction, "grant[ing] . . . motion to transfer" and "not decid[ing] the other pending motions, but . . . dismiss[ing] them with leave to refile in the transferee district.").

Furthermore, pursuant to Federal Rule of Civil Procedure 6(b), Defendants seek a seven-day extension of time to respond to the motion for preliminary injunction triggered after the Court's decision on the Motion to Transfer. Defendants respectfully submit that there is good cause for the requested extension. If the case is transferred to the Western District of New York, Government counsel there will need time to familiarize themselves with the litigation, with Plaintiff's allegations, and with any filings on the docket. They will also require time to learn the facts of the case and to coordinate responses with two Government agencies (DHS and ICE) and several Defendants. If the case is not transferred, undersigned counsel will also require additional time. In addition, the undersigned require the short extension of time given their heavy and growing dockets of active cases with many competing deadlines and responsibilities. Defendants will also need sufficient time to ensure internal review of a responsive Court filing consistent with Department of Justice procedures.

This motion for extension is filed in good faith and not for purposes of gaining any unfair advantage through delay. This is Defendants' first request for an extension. There are no other existing deadlines in this case. Finally, it is not anticipated that granting this motion will unduly

- 22 -

- 23 -

prejudice Plaintiff nor will it adversely affect this Court's orderly administration of this matter given the very early stages of this case.

* * *

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint for improper venue under Rule 12(b)(3), or, in the alternative, transfer this case to the Western District of New York, hold in abeyance Defendants' response to the motion for preliminary injunction pending decision on the request to dismiss and/or transfer, grant a seven-day extension after that decision on the motion to dismiss and/or transfer to respond to the motion for preliminary injunction, and grant Defendants leave to later raise other Rule 12 defenses to the Complaint. A proposed order is attached.

Dated: July 20, 2026             Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:        */s/ Mason D. Bracken*
       MASON D. BRACKEN
       DIMITAR GEORGIEV, D.C. Bar
       #1735756
       Assistant United States Attorneys
       601 D Street, NW
       Washington, DC 20530
       (202) 252-7822
       mason.bracken@usdoj.gov
       dimitar.georgiev-remmel@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID STREEVER,<br><br>        Plaintiff,<br><br>    v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, *et al.*,<br><br>        Defendants. | Civil Action No. 26-2356 (RC) |

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' Combined Motion to Dismiss the Complaint Under Federal Rule of Civil Procedure 12(b)(3), To Transfer Venue, To Hold in Abeyance Briefing on Plaintiff's Motion for Preliminary Injunction, and for Extension of Time, and the entire record herein, it is hereby

ORDERED that Defendant's response to the Motion for Preliminary Injunction is held in abeyance pending resolution of the Motion to Transfer, and it is further

ORDERED that Defendants' Motion to Dismiss is GRANTED [or, in the alternative, Defendants' Motion to Transfer to the Western District of New York is GRANTED, and the Clerk of the Court shall transfer this action to the United States District Court for the Western District of New York,] and it is further

ORDERED that Defendants shall respond to the Motion for Preliminary Injunction seven days after the Court's decision on the Motion to Transfer (but this shall not be required if the Court dismisses the Complaint), and it is further

- 2 -

ORDERED that Defendants have leave to later raise other Rule 12 defenses by motion in response to the Complaint.

SO ORDERED:

_____

Date

_____

RUDOLPH CONTRERAS
United States District Judge