**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAVID STREEVER,

                      *Plaintiff*,

    v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, et al.,

                    *Defendants*.

Civil Action No.: 1:26-cv-02356-RC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION**
**TO DISMISS THE COMPLAINT AND TO TRANSFER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ................................................................. 1

ARGUMENT .............................................................................................. 3

    I.      Venue is proper in this district under Section 1391(e)(1), so dismissal or transfer under Section 1406(a) is unwarranted. ..................................3

          A.     Venue is proper because multiple official-capacity defendants reside in the District of Columbia..............................................4

          B.     Venue is also independently proper because the Complaint alleges substantial District of Columbia events. ...........................................6

    II.     Transfer would not serve the convenience of the parties and witnesses or the interest of justice under 28 U.S.C. § 1404(a). ..............................9

          A.     The private-interest factors weigh against transfer. ....................................9

                1.     Streever's choice of this forum is entitled to deference. ........................................................................10

                2.     Defendants' preferred forum—where no Defendant is located and no decision was made—receives no independent deference. ...................................................11

                3.     The claims did not arise predominantly in the Western District of New York. .........................................13

                 4.     The location and convenience of the parties, witnesses, and proof militate against transfer. ...............................14

          B.     The public-interest factors favor retaining the case in this district. ........................................................................15

                1.     Relative congestion does not support transfer. .............................16

                2.     This controversy implicates significant national and District of Columbia interests. ........................................16

CONCLUSION.............................................................................................. 19

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aftab v. Gonzalez*,
    597 F. Supp. 2d 76 (D.D.C. 2009) ................................................................................ 11

*Aishat v. Dep't of Homeland Sec.*,
    288 F. Supp. 3d 261 (D.D.C. 2018) .............................................................................. 13

*Alaska v. Dep't of the Interior*,
    No. 1:25-cv-0330-PLF, 2025 WL 1730193 (D.D.C. June 23, 2025) .............................. 14

*Aracely v. Nielsen*,
    319 F. Supp. 3d 110 (D.D.C. 2018) .............................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 8

*Bourdon v. Dep't of Homeland Sec.*,
    235 F. Supp. 3d 298 (D.D.C. 2017) .............................................................................. 11

*Cameron v. Thornburgh*,
    983 F.2d 253 (D.C. Cir. 1993) ...................................................................................... 5

*Cnty. Bd. of Arlington v. U.S. Dep't of Transp.*,
    705 F. Supp. 2d 25 (D.D.C. 2010) ................................................................................ 8

*Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*,
    75 F. Supp. 3d 353 (D.D.C. 2014) ................................................................................ 14

*Darby v. U.S. Dep't of Energy*,
    231 F. Supp. 2d 274 (D.D.C. 2002) .............................................................................. 4

*Gross v. Owen*,
    221 F.2d 94 (D.C. Cir. 1955) ........................................................................................ 9

*Gulf Restoration Network v. Jewell*,
    87 F. Supp. 3d 303 (D.D.C. 2015) ................................................................................ 10

*Hueter v. Kruse*,
    610 F. Supp. 3d 60 (D.D.C. 2022) ................................................................................ 10

*Hunter v. Johanns*,
    517 F. Supp. 2d 340 (D.D.C. 2007) .............................................................................. 4

*\*Jalloh v. Underwood*,
    300 F. Supp. 3d 151 (D.D.C. 2018) ................................................................... 6, 9, 11, 12

*Lamont v. Haig*,
590 F.2d 1124 (D.C. Cir. 1978) ................................................................................ 4

*Law Bulletin Pub'g Co. v. LRP Publ'ns, Inc.*,
992 F. Supp. 1014 (N.D. Ill. 1998) ........................................................................ 18

*Liu v. Mayorkas*,
737 F. Supp. 3d 1 (D.D.C. 2024) ......................................................................... 4, 5

*Nichols v. Vilsack*,
183 F. Supp. 3d 39 (D.D.C. 2016) ...................................................................... 9, 15

*Oceana v. Bureau of Ocean Energy Mgmt.*,
962 F. Supp. 2d 70 (D.D.C. 2013) ......................................................................... 17

*Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*,
584 F. Supp. 2d 122 (D.D.C. 2008) ....................................................................... 12

*Pasem v. USCIS*,
No. 1:20-cv-344 (CRC), 2020 WL 2514749 (D.D.C. May 15, 2020) ............................. 11

*Perma-Liner Indus., LLC v. D'Hulster*,
No. 1:20-cv-409-RGA, 2021 WL 951185 (D. Del. Mar. 12, 2021) .................................. 18

*Ravulapalli v. Napolitano*,
773 F. Supp. 2d 41 (D.D.C. 2011) ......................................................................... 13

*Ross v. Davis*,
74 F. Supp. 3d 231 (D.D.C. 2014) ........................................................................... 9

*Shi v. New Mighty U.S. Trust*,
918 F.3d 944 (D.C. Cir. 2019) ............................................................................... 10

*Simpson v. Fed. Bureau of Prisons*,
No. 1:19-cv-3173 (CJN), 2020 WL 95814 (D.D.C. Jan. 8, 2020) ................................ 5, 6

*Stafford v. Briggs*,
444 U.S. 527 (1980) ............................................................................................... 6

*\*Stewart v. Azar*,
308 F. Supp. 3d 239 (D.D.C. 2018) ................................................................... passim

*Su v. U.S. Dep't of Just.*,
No. 1:25-cv-3412 (TNM), 2026 WL 904997 (D.D.C. Apr. 2, 2026) ............................. 8, 9

*Tower Lab'ys, Ltd. v. Lush Cosms. Ltd.*,
285 F. Supp. 3d 321 (D.D.C. 2018) ....................................................................... 12

iii

*Vasser v. McDonald*,
72 F. Supp. 3d 269 (D.D.C. 2014) ...................................................................... 9

*Wolfram Alpha LLC v. Cuccinelli*,
490 F. Supp. 3d 324 (D.D.C. 2020) .................................................................. 11

## Statutes

28 U.S.C.
§ 1391(b)(2) ....................................................................................................... 6
§ 1391(e) ......................................................................................................... 5, 9
§ 1391(e)(1) ................................................................................................... 3, 4
*§ 1391(e)(1)(A) ......................................................................................... passim
*§ 1391(e)(1)(B) ...................................................................................... 1, 4, 6, 7
§ 1391(e)(1)(C) ................................................................................................ 12
§ 1404(a) .................................................................................................... passim

## Other Authorities

David Andreatta, *An Email. A Knock at the Door. A Suit Alleges a Threat to Free
Speech.*, N.Y. Times (July 6, 2026) [archive.is/PENdX] ................................. 18

Homeland Security (@DHSgov), X (July 6, 2026, at 3:06 PM),
[perma.cc/Q8MY-Z9RD]................................................................................ 2, 18

Homeland Security (@DHSgov), X, https://x.com/DHSgov
[perma.cc/FN47-E4FV] ..................................................................................... 2

Jude Joffe-Block, *He sent a harsh email to ICE's top official. 5 months later, federal
agents tracked him down*, NPR (July 1, 2026), [perma.cc/VM58-VMGW] .................... 18

Landon Mion, *Another New Yorker says officers confronted him after he criticized ICE*,
Fox News (July 1, 2026), [perma.cc/W8QU-K5G8]........................................ 18

Patrick Whittle, *Another New York resident says he was warned by officers after
criticizing ICE*, Associated Press (June 30, 2026), [perma.cc/HC63-6APE] ................... 18

United States Courts, Federal Court Management Statistics—Profiles (Dec. 31, 2025),
[perma.cc/JKN3-RR4V] ................................................................................... 16

## Rules

Fed. R. Civ. P. 12(b)(3)...................................................................................... 1, 4

Fed. R. Civ. P. 12(b)(6)......................................................................................... 8

## INTRODUCTION AND BACKGROUND

This case is a First Amendment challenge to the federal government's abuse of its power to target, intimidate, and retaliate against a critic of Immigration and Customs Enforcement ("ICE"). Plaintiff David Streever seeks prospective relief against senior Department of Homeland Security ("DHS") and ICE officials who direct that speech-chilling conduct—and who can stop it—from where they exercise their authority: Washington, D.C. As such, venue is proper in this district, and the Court should deny Defendants' Rule 12(b)(3) motion to dismiss for improper venue or, alternatively, to transfer the case.

That three official-capacity defendants—Markwayne Mullin, David Venturella, and Jennifer Fenton—reside in this district alone defeats Defendants' argument that venue is improper. Their residence is all 28 U.S.C. § 1391(e)(1)(A) requires to establish venue in this district in this official-capacity action. In fact, Defendants' own principal authorities affirm that the Washington, D.C., residence of an official-capacity defendant makes this district a permissible venue. Defendants' contrary argument advances a cramped view of the purpose and text of Section 1391(e)(1)(A) and understates the extent to which the Washington, D.C., Defendants precipitated—or can at least restrain—the challenged efforts to chill Streever's speech.

Venue is also proper under 28 U.S.C. § 1391(e)(1)(B) because Streever's allegations, and the reasonable inferences from them, show a substantial part of the events giving rise to Streever's First Amendment claims took place in Washington, D.C. Streever sent an email to the then-Acting Director of ICE, headquartered in Washington, D.C. Compl. ¶¶ 31–32, 68. There, DHS and ICE officials under Mullin and Venturella's direction and authority decided how to respond to that email received in Washington, D.C. *See id.* ¶¶ 25, 31–36, 68, 70, 83; Compl. Ex. 1, ECF No. 1-1. Streever's email made its way—presumably because ICE and DHS officials sent it there—to ICE's Office of Professional Responsibility ("OPR"), also headquartered in Washington. *See* Compl.

1

¶¶ 25, 35–36; *see also* Compl. Ex. 2, ECF No. 1-2. In turn, OPR, under the direction of Fenton, decided to issue Streever a "Warning Notice," which ICE field agents ultimately delivered in New York. *See* Compl. ¶¶ 79–87. That notice not only tells Streever he risks prosecution for criticizing the government but also says OPR decisions about his speech will consider the "documented … delivery" of the notice. Compl. Ex. 2, ECF No. 1-2. The notice instructs Streever to contact the "local OPR field office" in Fairfax, Virginia—nineteen miles outside of Washington, D.C. *Id.*; *see also* Defs.' Mot. to Dismiss or Transfer at 4, ECF No. 17 ("Defs.' Br.").

After the media publicized the Warning Notice, a DHS spokesperson—again, in Washington, D.C.—said ICE "investigates all credible threats" to its officials and declined to comment on "ongoing investigations." Compl. ¶ 104. And when Streever sued, DHS's official X account repeated that position and warned that anyone who threatens law-enforcement officers "will face the consequences."[1] That account identifies itself as based in Washington, D.C.[2]

Simply put, this is not the local dispute over DHS and ICE field agents in New York that Defendants make it out to be. It started in Washington, D.C., and it will continue here unless this Court enjoins Defendants—top-down—from targeting Streever for his protected speech. That the Warning Notice is a form set out on DHS and ICE letterhead underscores that these notices are not peculiar to New York, but a systemic means, devised in Washington, D.C., of threatening Americans over their political speech.

Nor is Streever alone. He is one of untold numbers of Americans whose criticisms of DHS and ICE have placed them in those agencies' crosshairs, opening them to a months-long campaign

---

[1]  Homeland Security (@DHSgov), X (July 6, 2026, at 3:06 PM), https://x.com/DHSgov/status/2074208454974267678 [perma.cc/Q8MY-Z9RD].

[2]  Homeland Security (@DHSgov), X, https://x.com/DHSgov [perma.cc/FN47-E4FV] (identifying its location as "Washington, D.C.").

to chill their speech. Compl. ¶¶ 60–67. That campaign could emanate only from DHS's command in this district.

In sum, this dispute is of national significance and tied to the nation's capital. That is one reason the Court should also deny Defendants' request to transfer this case to the Western District of New York under Section 1404(a). That district is Streever's home and the site of one important encounter, but Defendants cannot show it is the center of this dispute. The conduct and actors span several districts; the motion identifies no Defendant who resides or works in the Western District; and much of the evidence likely consists of electronic records rather than physical evidence unique to Rochester.

## ARGUMENT

The Court should deny Defendants' motion for two reasons. First, venue is proper here under Section 1391(e)(1). Three official-capacity Defendants reside in this district, and the Complaint also establishes that material agency decisions occurred and will occur here. Second, Defendants have not shown that the Western District of New York is clearly more convenient or more closely connected to the controversy. The relevant conduct and actors span several districts; no identified Defendant is in the proposed transferee district; Defendants identify no material witness who would be unavailable here, and the controversy implicates national agency conduct as well as local effects.

**I.    Venue is proper in this district under Section 1391(e)(1), so dismissal or transfer under Section 1406(a) is unwarranted.**

Venue is proper in this district for two independent reasons. First, three defendants— Mullin, Venturella, and Fenton—are federal officials sued in their official capacities who reside in the District of Columbia. 28 U.S.C. § 1391(e)(1)(A). Second, the Complaint establishes that a

substantial part of the events giving rise to Streever's claims occurred and will occur here. Section 1391(e)(1)(B).

In evaluating Defendants' Rule 12(b)(3) motion, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007) (denying motion to dismiss and quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)). To prevail, Defendants "must present facts sufficient to defeat [Streever's] assertion of venue." *Id.*

But Defendants offer no such facts. Rather, they misread case law and offer a truncated account that treats this case as if it is a challenge only to the independent actions of a handful of field agents. It is not. This First Amendment challenge calls for the Court to enjoin not only those DHS field agents from targeting Streever for his protected government criticism, but also the Washington, D.C. officials who direct those actions—and who have the authority to stop them.

### A.    Venue is proper because multiple official-capacity defendants reside in the District of Columbia.

The residence of the official-capacity defendants alone establishes venue. 28 U.S.C. § 1391(e)(1)(A). Defendants acknowledge that Secretary Mullin and ICE's acting head, David Venturella, reside in the District of Columbia for purposes of the official-capacity claims. Defs.' Br. at 7; *see also Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978) (explaining that a federal defendant resides where the official performs official duties). The Complaint also alleges that OPR Associate Director Fenton performs her official duties here. Compl. ¶ 36.

Because the statute is disjunctive, the residence of any one of Mullin, Venturella, or Fenton is enough. *See* 28 U.S.C. § 1391(e)(1) (using "or" in setting out the three independent bases for establishing venue for official-capacity claims against federal officials); *see also Liu v. Mayorkas*,

4

737 F. Supp. 3d 1, 4 (D.D.C. 2024) ("Since one defendant is a resident of this district, venue is proper here."). Streever therefore need not also show that the operative events occurred here to establish this district as a proper venue (though, to be clear, important events underlying the claim did, in fact, occur here, *see infra* § I.B).

While Defendants argue these officials are not "proper defendants" for venue purposes, see Defs.' Br. at 7–9, their own authorities prove them wrong. In *Cameron*, the court affirmed that the Attorney General's District of Columbia residence made venue proper under Section 1391(e) for the plaintiff's official-capacity injunctive claim, as opposed to his individual-capacity damages claim, which Section 1391(e) did not govern. *Cameron v. Thornburgh*, 983 F.2d 253, 256 n.2 (D.C. Cir. 1993). In effect, *Cameron* confirms a material distinction: while concerns about "manufactur[ing] venue in the District of Columbia" may extend to "individual capacity" suits against federal government defendants, those concerns do not exist for official-capacity suits against federal government defendants. *Id.* at 256 & n.2, 257.

Here, Streever seeks only declaratory and injunctive relief, not damages. Compl. at 24–25. Thus, Defendants' interpretation of *Cameron*'s warning about manufactured venue is misplaced here. So too is their reliance on *Simpson v. Federal Bureau of Prisons*. Defs.' Br. at 7–8 (citing No. 1:19-cv-3173 (CJN), 2020 WL 95814, at *4 (D.D.C. Jan. 8, 2020)). Just like *Cameron*, *Simpson* highlights why venue for this case is proper in this district. The court held "[v]enue is proper in this district" under Section 1391(e)(1)(A)—contrary to what Defendants claim— because, as here, three official-capacity defendants resided in the District of Columbia. *Simpson*, 2020 WL 95814, at *4. True, the *Simpson* court ultimately reasoned the issues had minimal connection to the District of Columbia, but only in the context of exercising its discretion to transfer the case under Section 1404(a). *Id.* Those minimal connections did not stop the court from

rightly holding venue was proper under Section 1391(e)(1)(A). *Id.* And as Streever explains below, Section 1404(a) transfer is inapt here, given the strong connection between his claims and this district. *See infra* § II.

*Cameron* and *Simpson* accord with Section 1391(e)(1)(A)'s purpose; its text and history show that Congress sought to expand, not abrogate, the historical right of litigants to sue agency officials in Washington, D.C. Before Congress enacted the Mandamus and Venue Act of 1962, litigants seeking to compel or restrain federal action often ***had*** to sue a superior federal officer in the one place they could be found: the District of Columbia. *Stafford v. Briggs*, 444 U.S. 527, 534 (1980). Congress responded by broadening venue for actions nominally against federal officers but "in reality against the Government," while leaving individual-capacity damages claims subject to ordinary venue rules. *Id.* at 542–45. Congress's expansion of available venues should not be read, as Defendants would insist, to *contract* the range of proper venues for official-capacity lawsuits against federal government officials.

### B.    Venue is also independently proper because the Complaint alleges substantial District of Columbia events.

The Complaint independently establishes venue under 28 U.S.C. § 1391(e)(1)(B), as it details that material agency-level events that comprise a substantial part of the events giving rise to Streever's First Amendment claims took place in the District of Columbia. *See Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155 (D.D.C. 2018) (finding venue proper under 28 U.S.C. § 1391(b)(2) and reiterating that "even if a substantial part of the events in a case took place in one district," venue may still be proper "if a substantial part of the events *also* took place there" (emphasis in original)). Defendants are correct that the agents' physical encounters with Streever and his wife occurred in New York. Defs.' Br. at 8–9. But the challenged conduct is not limited to those encounters. It includes several acts that occurred in this district (or at the very least, ones the

Court can reasonably infer took place here). These include OPR's decision to characterize Streever's email as a potential federal crime,[3] use of a standardized DHS/ICE notice, DHS's asserted continuation of the investigation, and official DHS communications defending that investigation. Compl. ¶¶ 80–85, 104–13; Compl. Ex. 2, ECF No. 1-2. Those independent acts may have driven agents to visit Streever's home in Rochester, and his hotel in New York City, where he slept after arriving from a European vacation,[4] but the incipient decisions were made in this district.

The Complaint places superior officials at DHS, at ICE's investigative operations, and at OPR—all of whom reside in this district—at the center of this lawsuit. For instance, it alleges they control the government's actions against Streever, can withdraw the Warning Notice, and can end further government action against Streever. Compl. ¶¶ 24–37. The notice itself states that OPR (not its field agents) will consider Streever's receipt of it if he later engages in speech OPR deems unlawful. Compl. Ex. 2, ECF No. 1-2. In short, the allegations establish that while the agents who delivered the notice may have been the messengers, they are not the decision-makers ultimately responsible for the government's coercive and retaliatory acts against Streever for his protected criticism. Those allegations (and the reasonable inferences taken from them in Streever's favor) support venue under Section 1391(e)(1)(B).

While Defendants claim Mullin, Venturella, and Fenton are not "proper defendants," their misplaced argument does not alter the venue question. Defendants invoke *Ashcroft v. Iqbal* for the

---

[3] Streever's email did not identify him as a New York resident. Compl. Ex. 1, ECF No. 1-1. At minimum, that fact supports a reasonable inference that officials at ICE's Washington, D.C., headquarters—where the email was directed—assessed the email before deciding which field agents or office to involve.

[4] If Streever had instead returned home by way of Philadelphia or Washington, all signs indicate agents would have tracked him there, too. *See* Compl. ¶ 90–94.

rule that an official cannot be held personally liable merely for a subordinate's conduct in a *Bivens* action. Defs.' Br. at 8 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). But that rule has no bearing on venue; it goes to the merits. And Defendants do not attempt a meaningful attack on the merits at this stage. To the contrary, they have deferred adjudication of any Rule 12(b)(6) motion until after resolving this motion. On the substance, their argument about damages liability under a *respondeat superior* theory is misplaced: this is an official-capacity action for prospective relief, not a *Bivens* damages claim. Government executives are appropriate defendants in actions seeking to enjoin their agencies' actions. *See Cnty. Bd. of Arlington v. U.S. Dep't of Transp.*, 705 F. Supp. 2d 25, 29–30 (D.D.C. 2010) (holding Secretary of Transportation was proper defendant because he oversees officials who can effectuate injunctive relief).

And Mullin, Venturella, and Fenton are, notably, necessary defendants given the injunctive relief Streever seeks. Mullin directs DHS and its components; Venturella directs ICE and its investigative operations; and Fenton directs OPR. Compl. ¶¶ 24–37. Each can withdraw or disavow the Warning Notice, prohibit reliance on it, and direct the relevant agency components and officials to cease further action against Streever. *Id.* ¶¶ 30, 34, 37. Those allegations connect the officials to the requested relief and distinguish this case from one seeking personal liability merely because of supervisory rank. Were injunctive relief limited to the agents who delivered the notice, DHS would remain free to deploy other agents or, as the notice warns, make decisions based on Streever's receipt of the notice. *See Cnty. Bd. of Arlington*, 705 F. Supp. 2d at 29–30.

The *Su* case Defendants cite is also readily distinguishable. There, the Department of Justice—which was the only defendant in this district—had previously "promulgated the governing regulation decades ago," but otherwise was not involved in the plaintiff's visa petition. *Su v. U.S. Dep't of Just.*, No. 1:25-cv-3412 (TNM), 2026 WL 904997, at *2–3 (D.D.C. Apr. 2,

2026). While a "closer connection" to the events might suffice, the Department of Justice's connection was "[p]eripheral and tangential" relationship to the dispute suggested the Department had no "real connection" to the dispute. *Id.* at \*3. Here, unlike the Department of Justice in *Su*, the resident Defendants are not strangers to this dispute. Rather, they are the officials with whom the buck stops, and to whom a preliminary injunction must extend to halt Streever's ongoing First Amendment injuries. Ultimately, "venue in the District of Columbia is not destroyed simply because decisions made within the District affected a plaintiff outside the District." *Vasser v. McDonald*, 72 F. Supp. 3d 269, 278 (D.D.C. 2014) (Contreras, J.).

## II.    Transfer would not serve the convenience of the parties and witnesses or the interest of justice under 28 U.S.C. § 1404(a).

Venue is proper under Section 1391(e), and the Court should decline Defendants' invitation to disturb Streever's choice of venue by transferring this case to the Western District of New York under Section 1404(a). Defendants have not met their burden to "show decisively that transfer is proper" with facts establishing that convenience and both private- and public-interest factors favor the Western District of New York. *Jalloh*, 300 F. Supp. 3d at 155–56; *see also Ross v. Davis*, 74 F. Supp. 3d 231, 235 (D.D.C. 2014); *Nichols v. Vilsack*, 183 F. Supp. 3d 39, 42 (D.D.C. 2016) (denying motion to transfer). A plaintiff's venue choice "will rarely be disturbed … unless the balance of convenience is strongly in favor of the defendant." *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955). Defendants fail to make that showing.

### A.    The private-interest factors weigh against transfer.

Defendants have not shown any private interest factor favors transfer. Rather, the record shows this district has meaningful ties to the challenged agency conduct; there is no Defendant in the proposed transferee district; the relevant events and actors are dispersed across multiple

9

districts in New York, Virginia, and this district; no material witness is unavailable in this district; and the likely evidence is largely electronic.

### 1.      Streever's choice of this forum is entitled to deference.

Defendants challenging venue must overcome the deference afforded to a plaintiff's choice of forum. *See Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 311 (D.D.C. 2015); *see also Hueter v. Kruse*, 610 F. Supp. 3d 60, 67 (D.D.C. 2022) (recognizing, in the context of forum non conveniens, a "presumption in favor of a plaintiff's chosen forum"). While that presumption is strongest when a plaintiff sues "in his home forum," an out-of-state plaintiff still receives "deference if the choice of forum 'was motivated by legitimate reasons'" and not "'tactical advantage.'" *Hueter*, 610 F. Supp. 3d at 68 (quoting, in part, *Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 950 (D.C. Cir. 2019)). "Courts in this district have often found that federal-agency action that occurs here can provide 'meaningful ties' to support retention of the case" against a motion to transfer under Section 1404(a). *Stewart v. Azar*, 308 F. Supp. 3d 239, 247 (D.D.C. 2018) (quoting *Jewell*, 87 F. Supp. 3d at 312).

Those ties are meaningful here and Streever's reasons for suing here—to restrain the officials who can recall their dispatched agents—are legitimate. DHS and ICE are headquartered in this district; three important defendants perform their official duties here; and the Complaint challenges ongoing agency conduct that those officials direct and can terminate. The Complaint attributes the challenged continuing conduct to components directed by Washington, D.C.-resident officials, not merely to isolated choices by field agents.

The immigration cases on which Defendants rely neither undermine those meaningful ties to *this* district nor do they establish meaningful ties to the Western District of New York. The *Bourdon*, *Pasem*, *Wolfram Alpha*, and *Aftab* cases Defendants cite involved individualized immigration adjudications centered in field offices outside this district. *See* Defs.' Br. at 12–16

10

(citing *Bourdon v. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 301, 305 (D.D.C. 2017); *Pasem v. USCIS*, No. 1:20-cv-344 (CRC), 2020 WL 2514749, at \*1, \*4 (D.D.C. May 15, 2020); *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 328–29, 333 (D.D.C. 2020); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009)). But individual determinations on immigration status and visa petitions arise in a context with little resemblance to the case here. Applications are generally processed and determined entirely within a local field office, and decisions are made by officials with significant delegated discretion to evaluate evidence particularized to an individual. *See Bourdon*, 235 F. Supp. 3d at 305–06. By contrast, this case challenges coordinated ICE and OPR conduct implemented through standardized notices controlled by federal officials in Washington, D.C., who are required for meaningful and complete prospective relief.[5]

### 2. Defendants' preferred forum—where no Defendant is located and no decision was made—receives no independent deference.

Unlike a plaintiff's forum choice, the Defendants' preferred forum is not ordinarily entitled to any deference. *Jalloh*, 300 F. Supp. 3d at 156. That general principle does not change simply because Defendants prefer to litigate in Streever's home forum, and they offer no other reason this might be the "extraordinary case where their choice of forum should receive deference." *Id.* at 156–58 (denying transfer although proposed transferee forum was plaintiff's home forum and the location of significant relevant events). Even in cases presenting a clear connection to a defendant's proposed forum and an arguably "attenuated" one to the District of Columbia, courts in this district have required defendants to demonstrate that the "local population"—not just the plaintiff—"faced specific injury of a particularly local nature" for this factor to weigh in favor of

---

[5] Even if the challenged action were attributable only to the OPR field office serving New York, Defendants concede that office is in the Eastern District of Virginia—not the Western District of New York. Defs.' Br. at 4.

transfer. *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126–28 (D.D.C. 2008) (denying motion to transfer case, brought in this district by Californians challenging the designation of California land as a wildlife habitat, to California because the "case directly affects only the Plaintiffs, who oppose the inclusion of" their own property in the designation). No such particular injury localized to the population of the Western District of New York is present here.

And Defendants' motion identifies no Defendant who resides or works in the Western District of New York. It identifies Special Agent Pitts as working in Jamaica, New York, which is in the Eastern District of New York, and the OPR field office serving New York, which is in Fairfax, Virginia. Defs.' Br. at 4. Meanwhile, the Complaint alleges Mullin, Venturella, and Fenton work in this district. Compl. ¶¶ 28, 32, 36. And Defendants do not identify duty stations for Brodie or Henry.

Defendants also acknowledge that transfer would require new government counsel to learn the case and coordinate with the same federal agencies. Defs.' Br. at 22. Those facts do not show the Western District is more convenient for Defendants. If anything, they disfavor it.

While Streever's residence makes the Western District a *permissible* forum under Section 1391(e)(1)(C), it does not make that forum affirmatively more convenient. Ultimately, Defendants have not established that the "added convenience and justice of litigating in their chosen forum overcomes" the weight given to Streever's choice as plaintiff, and this factor weighs against transfer. *Stewart*, 308 F. Supp. 3d at 246 (quoting *Tower Lab'ys, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018)); *see Jalloh*, 300 F. Supp. 3d at 155–58 (denying transfer to the plaintiff's home forum despite significant events there).

### 3.    The claims did not arise predominantly in the Western District of New York.

While this case has ties to New York, Section 1404(a) permits transfer to a particular federal *district*, not an entire state in the abstract. And Defendants' arguments apply with equal force to (at least) five federal districts. The agents' visit to Streever's Rochester home occurred in the Western District of New York. The follow-up tracking of Streever to a New York City hotel occurred in the Southern District of New York. Special Agent Pitts works in Jamaica, New York, in the Eastern District. The OPR field office serving New York is in the Eastern District of Virginia. And most significantly, the superior officials who direct those agents and OPR—officials who put these events in motion and can provide the requested relief—all did so from the District of Columbia. Defs.' Br. at 4–5; Compl. ¶¶ 28, 32, 36.

Defendants cannot aggregate events spread across Washington, D.C., Virginia, and New York and assign all of them to the Western District of New York. Their own account shows the relevant conduct and actors are dispersed among several districts. That only weakens the assertion that the claims arose chiefly in Rochester.

More fundamentally, Streever's lawsuit challenges agency-level decision-making and continuing conduct, not merely "individual officers who were bound by such policy." *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 129 (D.D.C. 2018) (Contreras, J.). When a plaintiff directly challenges a policy promulgated or administered in this district, "the interests of justice could well favor venue in this District." *Id.* at 128 (quoting *Aishat v. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 270 (D.D.C. 2018) (cleaned up)); *accord Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011). Defendants' reliance on local-field-office and local-resource cases is therefore misplaced. *Stewart*, 308 F. Supp. 3d at 249–50.

13

*Alaska v. Department of the Interior* does not establish a contrary rule. No. 1:25-cv-0330-PLF, 2025 WL 1730193, at *8–9 (D.D.C. June 23, 2025) (cited at Defs.' Br. at 15). That dispute concerned agency decisions and legal interpretations relating exclusively to a dispute over Alaskan tribal land and an Alaskan tribe, leaving "little doubt" that the impact would be felt primarily or "exclusively" in Alaska. *Id.* at *8. The court expressly distinguished cases in which a dispute's national significance outweighs the local interest. *Id.* at *9. The use of a federal law-enforcement component to chill criticism of national immigration policy is not comparably local—especially when DHS and ICE have engaged in a pattern of targeting and threatening to prosecute their critics. Compl. ¶¶ 60–67. This factor weighs against transfer.

### 4. The location and convenience of the parties, witnesses, and proof militate against transfer.

Nor does it help the case for transfer that Defendants argue that, because witnesses reside in New York, it would be more convenient to them to litigate this matter in the Western District of New York. Defendants identify Streever, his wife, another Warning Notice recipient in Syracuse, unidentified neighbors, and federal employees as potential witnesses. Defs.' Br. at 16–17. But witness convenience matters "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 357 (D.D.C. 2014). Defendants offer no declaration or other evidence that any material witness would be unavailable here. Streever (and presumably his wife) chose this forum. The Syracuse recipient of a warning notice resides in the Northern District of New York. Whether unidentified neighbors witnessed anything is purely speculative. *See* Defs.' Br. at 16. In any event, their testimony would be cumulative of Streever's wife's testimony.

That leaves the federal employees. For one thing, Mullin, Venturella, and Fenton should be expected to attend trial in this district, where they perform their official duties. It defies common sense to think it would be more convenient for them to attend trial in upstate New York.

What's more, Defendants' "argument fails the straight-face test" because they should also be able to secure testimony from current employees. *See Nichols*, 183 F. Supp. 3d at 42 (discounting a witness-convenience argument because the agency could secure testimony from its current employees). Defendants do not identify the employees' expected testimony or their location or explain why they could not appear. This showing (or, more accurately, lack thereof) does not help Defendants carry their burden to show that transfer would serve the parties' interests.

Nor have Defendants shown the Western District would provide easier access to evidence. Much of the central evidence—notice templates, investigative records, supervisory communications, records showing how agents located Streever, and DHS's public-response materials—is electronic and within Defendants' control. Defendants offer no facts showing any documentary or similar evidence is in Rochester.

This factor also disfavors transfer.

**B.      The public-interest factors favor retaining the case in this district.**

The public-interest factors confirm that transfer is unwarranted. The transferee court's familiarity with the governing law is neutral because both courts can apply federal constitutional law.[6] Relative congestion between this Court and the transferee court weighs against transfer. And the critical third factor—the local or national interest in the dispute—strongly favors retaining the case in this district.

---

[6] *See* Order at 2, ECF No. 18 (noting that "if the case is transferred, the parties will be litigating under Second Circuit precedent rather than D.C. Circuit precedent" but "as the Court sees it, this can be easily remediated through supplemental briefing").

### 1.    Relative congestion does not support transfer.

While Defendants emphasize that more cases are pending in this district, their own statistics show that civil cases reach disposition faster here. In this district, civil cases resolve in a median of 7.3 months, compared with 9.9 months in the Western District of New York.[7] Defendants likewise report a shorter median time to trial here, 52.1 months compared with 55.0 months. Defs.' Br. at 17–18.[8]

Defendants do not explain how those figures suggest that the Western District of New York would provide faster or more efficient resolution. Nor could they. Those statistics show instead that transferring this case to the Western District of New York would only add to the more-congested dockets there. The number of cases pending per judgeship, for example, is notably lower in this district (464 cases, of which 286 are civil) than the Western District of New York (968, of which 590 are civil).[9] Transferring this case is likely to slow, not expedite, its resolution.

### 2.    This controversy implicates significant national and District of Columbia interests.

Defendants devote one sentence to what courts in this district have deemed the "'most important' of the public-interest factors: the local interest in having local controversies decided at home," *Stewart*, 308 F. Supp. 3d at 249, asserting "[t]his is a New York controversy." Defs.' Br. at 18. Rochester, no doubt, has a legitimate interest in the agents' visit and the effects on a local

---

[7] *Compare* United States Courts, Federal Court Management Statistics—Profiles (Dec. 31, 2025) at 2 (profile of the U.S. District Court for the District of Columbia), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf [perma.cc/JKN3-RR4V] *with id.* at 12 (profile of the U.S. District Court for the Western District of New York).

[8] *Id.* at 2, 12.

[9] *Id.* at 2, 12.

16

resident. But that does not make the controversy exclusively local. The question is whether the dispute concerns "national policy or national significance." *Stewart*, 308 F. Supp. 3d at 249 (quoting *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 77 (D.D.C. 2013)).

Streever's litigation challenges the tactics of federal agencies and law enforcement in responding to criticism of federal immigration policy. The requested injunction runs against the national leadership of DHS, ICE, and OPR, and would govern continuing agency action. So, although Streever's constitutional injury occurred in New York, this is not a dispute over a uniquely local resource, facility, or adjudication whose effects will be confined to the proposed transferee district. It is distinctly national.

*Stewart* is instructive. In that case, sixteen Kentucky Medicaid enrollees sued in this district challenging the Department of Health and Human Services' approval of Kentucky's Medicaid program. 308 F. Supp. 3d at 242. Although all the plaintiffs were located in Kentucky and the program's immediate effects would be felt by citizens in Kentucky, the court rejected the government's arguments that the case was purely local, explaining that the "central question … is not whether the people of Kentucky have an interest—even a strong one—in the outcome of th[e] case," but "whether [it was] a question of national policy or national significance." *Id.* at 249 (citation modified). Because the challenged federal action could apply to similar proposals from other states, the court found national significance and denied transfer. *Id.* at 249–50.

Defendants' use of "Warning Notices" and other tactics to respond to criticism of DHS and ICE policy likewise extends beyond a uniquely local dispute. The agencies' use of formal notices, on agency letterhead, to target protected speech suggests their use of "Warning Notices" is not confined to New York. And the significant national media attention to Streever's experience, coupled with DHS's multiple public statements to a national audience, reflects that national

17

interest.[10] Add to that DHS's pattern of using a host of social media posts, subpoenas, media statements, and police tactics to target critics, and there is no doubt: Streever's lawsuit is of national significance.

Nor does the possibility of enforcing an injunction favor transfer. Defendants assert that Streever "in effect, seeks an injunction against Government agents in New York." Defs.' Br. at 19. But the Complaint seeks relief from senior officials who exercise their duties in this district to control the challenged conduct and who bind their officers and agents. Compl. at 24–25; *id.* ¶¶ 24–37. And Defendants identify no practical obstacle to this Court's supervision of relief directed to any of them.

The out-of-circuit private-party cases Defendants cite, Defs.' Br. at 19–20 (citing *Perma-Liner Indus., LLC v. D'Hulster*, No. 1:20-cv-409-RGA, 2021 WL 951185, at \*4 (D. Del. Mar. 12, 2021) and *Law Bulletin Pub'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1021 (N.D. Ill. 1998)), do not establish that a federal court in Rochester is uniquely positioned to enforce an official-capacity injunction against national agencies. Those cases each involved private defendants, property, or operations physically located in the transferee forum. Here, none of the Defendants is a resident of the Western District of New York, and Streever is not seeking to enjoin conduct specific to a particular district. He wants to halt DHS efforts—which DHS has already shown it is

---

[10] *See, e.g.*, Jude Joffe-Block, *He sent a harsh email to ICE's top official. 5 months later, federal agents tracked him down*, NPR (July 1, 2026), https://www.npr.org/2026/07/01/nx-s1-5874124/dhs-tracks-ice-critic [perma.cc/VM58-VMGW]; Patrick Whittle, *Another New York resident says he was warned by officers after criticizing ICE*, Associated Press (June 30, 2026), https://apnews.com/article/ice-free-speech-new-york-6950b35016b1b49c8df8309034d5c780 [perma.cc/HC63-6APE]; Landon Mion, *Another New Yorker says officers confronted him after he criticized ICE*, Fox News (July 1, 2026), https://www.foxnews.com/us/another-new-yorker-says-officers-confronted-him-after-he-criticized-ice [perma.cc/W8QU-K5G8]; David Andreatta, *An Email. A Knock at the Door. A Suit Alleges a Threat to Free Speech.*, N.Y. Times (July 6, 2026), https://www.nytimes.com/2026/07/06/nyregion/ice-email-lawsuit.html [archive.is/PENdX]; *see also* Homeland Security July 6, 2026, post to X.com, *supra* note 1.

willing to undertake outside of the Western District of New York—to intimidate him anywhere he goes.

<b>CONCLUSION</b>

For all of the reasons set forth above, the Court should deny Defendants' motion to dismiss and decline to transfer this case.

Dated: August 3, 2026

Respectfully submitted,

/s/ JT Morris
JT Morris, Bar No. 979772
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION (FIRE)
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
jt.morris@fire.org

Adam Steinbaugh, Penn. Bar No. 326475*
Jeffrey Zeman, Penn. Bar No. 328570*
Hannah Abbott, Penn. Bar No. 337123*
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION (FIRE)
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
adam@fire.org
jeff.zeman@fire.org
hannah.abbott@fire.org

* Admitted *Pro hac vice*.

*Counsel for Plaintiff*

19