UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID STREEVER,

        Plaintiff,

   v.

MARKWAYNE MULLIN, in his official
capacity as Secretary of the Department of
Homeland Security, et al.,

        Defendants.

Civil Action No. 26-2356 (RC)

**<u>OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................ ii

Introduction .................................................................................................................... 1

Background ..................................................................................................................... 3

      I.      Factual Background ................................................................................... 3

      II.     Procedural History ................................................................................... 8

Legal Standard ............................................................................................................... 9

Argument ...................................................................................................................... 11

      I.      Streever Cannot Show a Clear Likelihood of Success on the Merits ................... 11

           A.      The Claims Fail at the Threshold ................................................. 11

                1. Streever's Complaint Should Be Dismissed for Improper Venue or Transferred ............................................................................. 11

                2. Streever Fails to Plead Sufficient Facts to Establish Standing for a Prospective Injunction ............................................................... 11

                3. Streever's Request for Preliminary Injunctive Relief Is Moot Because ICE OPR Concluded Its Investigation ................................................. 20

           B.      The First Amendment Speech, Petition, and Retaliation Claims Fail ...... 24

                1. Streever Does Not Plead an Adverse Action ............................................. 25

                2. Streever Does Not Plead Causation ........................................................... 26

            C.      Streever Cannot Seek Ultimate Relief in a Preliminary Posture ............. 28

      II.     Streever Cannot Demonstrate Imminent, Irreparable Harm ................................ 29

           A.      Streever Misstates the Imminent, Irreparable Harm Requirement ........... 30

           B.      Streever Has Not Established Imminent, Irreparable Harm ..................... 31

      III.    The Balance of Equities and Public Interest Favor Denying Injunctive Relief.... 34

      IV.    The Requested Preliminary Injunction is Overbroad ........................................... 35

      V.     Any Preliminary Injunction Issued Should Be Stayed ........................................ 37

      VI.    The Court Should Require Streever to Post Security ........................................... 37

Conclusion .................................................................................................................... 38

Defendants, officials with the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), by and through undersigned counsel, respectfully file this opposition to Plaintiff David Streever's Motion for Preliminary Injunction (ECF No. 9). A proposed order and a declaration from Brent L. Goodwin, the Assistant Director for the Office of Professional Responsibility ("OPR") Investigations, within OPR at ICE, Def. Ex. A, are attached.

## INTRODUCTION

When a potential threat concerns law enforcement, one investigates. Without investigation, law enforcement cannot know whether someone presents an actual threat. In a climate with hyper-charged rhetoric and a dramatic increase in both threatened and, sadly, effectuated violence against public officials across the legislative, executive, and judicial branches of federal, state, and local government, these investigations are necessary. In-person investigatory visits from law enforcement—accompanied by prophylactic warnings about federal law—are a critical tool in the investigative and preventative process, and they do not violate the First Amendment. And when that investigation ends, a plaintiff may not obtain a preliminary injunction against unspecified, speculative future harm.

These principles govern this case. In January 2026, Plaintiff David Streever sent a three-paragraph email to ICE's former acting director, writing, *inter alia*, "You will never know peace." Compl. Ex. 1. Agents from ICE OPR investigated. Two agents visited Streever's home in Rochester, New York, for a knock-and-talk visit, intending to examine whether he sent the email and if he presented a potential or actual threat. Goodwin Decl. ¶¶ 7, 10-11. He was not home, so they spoke to his wife for a couple of minutes and left a "Warning Notice" with her, which advised that a threat to assault a federal official (or worse) would violate federal law. Compl. Ex. 2. They did not state that Streever had in fact violated any law. Goodwin Decl. ¶¶ 6, 11. Soon after, a

third agent tried (unsuccessfully) to speak with Streever at his hotel in New York City. Two of these agents also called Streever a few times and asked to speak with him. None of the Defendants ever actually spoke with Streever. After this, before Streever even filed his Complaint, ICE OPR closed its investigation. Goodwin Decl. ¶¶ 13-14. With its investigation closed, ICE states that it does not contemplate any further investigation into Mr. Streever and has no plans to contact him again, visit him in person, or deliver another Warning Notice or similar document. *Id.* ¶ 15.

Streever sued, concerned about his First Amendment rights. He moved for a preliminary injunction, seeking an order barring Defendants, all DHS and ICE employees, and the exceedingly broad category of "any persons acting in concert with them," from taking any further actions towards Streever due to his January 2026 email, any of his future protected speech or petitioning activity, and enjoining "any further steps in reliance on Streever's receipt of the 'Warning Notice.'" Pl. Mot. Prelim. Inj. Prop. Order (ECF No. 9-3).

The Court should deny Streever's motion for preliminary injunction. To start, he misplaced venue here, thus requiring this Court to dismiss the case or, in the alternative, transfer to Streever's home district where the alleged events occurred—the Western District of New York. *See* ECF No. 17 (Def. Mot. to Dismiss or Transfer). The Court may (and should) reach this ground without reaching any of the other issues. Should the Court proceed further, however, there are several doctrinal bases on which the Court should deny the motion for a preliminary injunction. The agents engaged in a limited investigation of a potential threat, closed this investigation before Streever even sued, and have no further acts contemplated towards Streever. Streever, then, has not established standing under *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), for the exclusively prospective relief he seeks because he has failed to make a clear showing of a "real and immediate threat" of future harm, has failed to show imminent, irreparable harm, and has

- 2 -

failed to present a live case or controversy because the conclusion of ICE's investigation before he sued mooted his claims. Streever's First Amendment claims also fail on the merits because he has not shown that a person of ordinary firmness would be deterred from further protected activity by these limited interactions with law enforcement, thus failing the adverse action element, and has not shown that Defendants acted with a retaliatory motive because of his email. Furthermore, the balance of the equities and the public interest do not favor the exceedingly broad injunction Plaintiff seeks to micro-manage law enforcement, who work in good faith to investigate potential threats and stop real ones before it's too late. That Streever ultimately did not present an actual threat—a fact unknown prior to the investigation—does not mean the First Amendment was violated or justify a sweeping injunction.

## BACKGROUND

### I.      Factual Background

"A detailed statement of the facts is not necessary to comprehend the significant local interests at stake requiring transfer of this action to a federal court in the State of" New York. *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 355 (D.D.C. 2014). All of these alleged actions occurred in the Western or Southern Districts of New York. Put simply, Plaintiff has not alleged any meaningful contacts to the District of Columbia.

The sole Plaintiff, Streever, resides in Rochester, New York. Compl. ¶ 20.[1] He "sent a three-paragraph email (Exhibit 1) to Todd M. Lyons," ICE's then-Senior Official Performing the Duties of the Director of ICE, "decrying the conduct of ICE's agents, drawing comparisons to Nazi Germany, and predicting Lyons' conscience would haunt him." Compl. ¶ 5. *See also* Pl. Ex. 1

---

[1]      Although Plaintiff filed his address under seal (Compl. at 1 n.1; ECF No. 2), the Complaint specifies that "Plaintiff David Streever ('Streever') is a citizen of the United States and a resident of Rochester, New York." Compl. ¶ 20.

(Jan. 26, 2026, email).   "Five months later," Streever alleges, ICE agents "embarked on a trip across New York" to visit him.  Compl. ¶ 6.  In New York, "ICE Special Agents David Brodie and Abbi Henry visited Streever's house in Rochester, learning from his wife that Streever was on a trip to Northern Europe with his seven-year-old daughter."  *Id.* ¶ 7.

At Streever's home in Rochester, investigating whether Streever constituted a threat, "[t]he agents told Streever's wife that he 'may or may not have sent an email threatening' the Director of ICE."  *Id.* ¶ 7.  The Complaint includes photos of Defendants Brodie and Henry on Streever's porch on June 23, 2026.  *Id.* ¶¶ 71–73.  The Complaint describes the agents' conversation with Streever's wife, which took place in person in Rochester.  *Id.* ¶¶ 74–78.

Streever alleges that ICE agents left a "Warning Notice" for him at the home he shares with his wife in Rochester.  *Id.* ¶¶ 79–81.  *See also* Pl. Ex. 2 (hereinafter, the "Notice").  This prophylactic warning served to put Streever on notice about the law.  Pl. Ex. 2.

The Notice stated that follow-up about the Notice should be handled locally.  Specifically, the Warning Notice stated, "If you wish to discuss this Notice and its contents further, please contact the undersigned Special Agent who served you with this Warning Notice or the local OPR field office."  *Id.*  The reference to "the local OPR field office" meant ICE's Office of Professional Responsibility.  *Id.*  ICE OPR agents Henry and Brodie operated out of the ICE OPR office in Jersey City, New Jersey, just outside of New York City, and Homeland Security Investigations ("HSI") Special Agent Trevor Pitts operated out of John F. Kennedy International Airport in New York City, where he serves as the duty agent.  Goodwin Decl. ¶¶ 8, 12.

Also in New York, "DHS or ICE sent a third agent to confront Streever" in New York City upon his return from Europe a few days later, on June 25, 2026.  Compl. ¶¶ 88–90.  Defendant Special Agent Pitts attempted to contact Streever in person at his hotel in New York City, but

- 4 -

Streever did not speak with him. *Id.* ¶¶ 91–93. "Also that evening, Streever also received two voicemails from callers—one male, one female—who did not provide their names and identified themselves only as "Homeland Security Investigations." *Id.* ¶ 95. The Complaint also describes Streever and his daughter's Amtrak ride from New York City to Rochester. *Id.* ¶ 97.

Most of the Defendants have New York-area ties.

ICE OPR agents Henry and Brodie operated out of the ICE OPR office in Jersey City and Special Agent Pitts operated out of JFK airport. Goodwin Decl. ¶¶ 8, 12. Defendant Special Agent John Doe, the special agent in charge of ICE's OPR East Office, allegedly "oversees operations of OPR in the State of New York." Compl. ¶¶ 38–40. Streever alleges that Special Agents Brodie, Henry, and Pitts are "among the ICE officers assigned (among other things) to locate and confront people about their speech concerning ICE officials, including in the State of New York, using the 'WARNING NOTICE' documents described in this Complaint." *Id.* ¶¶ 41–44.

The Complaint names another person who received a "Warning Notice"—a Syracuse, New York resident. *Id.* ¶¶ 99–103. Allegedly, two of the same people named as Defendants here—Special Agents Brodie and Henry—served a Warning Notice on this other person. *Id.* ¶ 101. The Complaint includes allegations about another person experiencing alleged retaliation at the hands of other DHS or ICE officials—not the named Defendants—for speech activities. *Id.* ¶¶ 60–63.

As ICE's declarant explains, ICE OPR investigates potential threats to ICE senior leadership. Goodwin Decl. ¶ 5. ICE personnel also utilize traditional law enforcement investigation techniques, which include but are not limited to a consensual interview between a law enforcement officer and a person, where the person is free to leave or can refuse to answer questions. ICE law enforcement officers also may issue a Warning Notice letter to the individual of the investigation providing that he or she may be in violation of federal law. *Id.* ¶ 6. Here,

Streever's email was forwarded to OPR because it was determined that the email had potential threatening undertones towards ICE personnel, potentially presenting a safety concern. ICE OPR did not have any information about Streever when the email came in, so OPR determined that it needed to conduct an ICE investigation. *Id.* ¶ 7.

On June 23, 2026, Agents Henry and Brodie attempted to conduct a consensual interview with Streever at his residence in Rochester, New York. The purpose of the consensual interview was to confirm that Streever was the actual author of the email and that no other persons had access to the email address from which the email was sent. A consensual interview would allow the agents to assess Streever's intentions behind the email to Acting Director Lyons. In addition, a consensual interview allows agents to assess in person the veracity of an individual's statements. This in-person contact also would allow the agents to investigate whether or not Streever presented a threat. *Id.* ¶ 10.

Upon their visit to Streever's home, Agent Henry spoke with his wife, who said that Streever was in Norway until a few days later, Friday, June 26, 2026. His wife said that she did not believe that Streever would write a threatening email to Acting Director Lyons. Agent Henry left a Warning Notice letter and requested that his wife provide that document to him. Agent Henry wrote her name, HSI, and her phone number on the back of the Warning Notice letter she gave to Streever's wife. *Id.* ¶ 11.

Then, Agents Henry and Pitts attempted to meet Streever upon his arrival at JFK airport. *Id.* ¶ 12. They did not encounter him at the airport, obtained his hotel information, and went there. *Id.* They tried to meet him in person but were unable to do so. Agents Henry and Pitts then each called Streever and each left a voicemail. *Id.* ¶ 12. Neither Agents Henry, Brodie, or Pitts nor any other ICE agents took any other steps to contact Streever.

Agent Henry wrote a report of investigation to serve as a closing report summarizing the investigation and stated the ICE OPR investigation was closed. Goodwin Decl. ¶ 13. Agent Henry submitted the closing report to management on that same day. *Id.* Agent Henry stated in her June 30, 2026, closing report that OPR Jersey City had exhausted all investigation leads and that the case was closed. *Id.* Streever filed his Complaint on July 6, 2026. *See* ECF No. 1 (Compl.). With its investigation closed, ICE OPR does not contemplate any further investigation into Mr. Streever regarding his January 2026 email to Lyons. Decl. ¶ 15. As such, ICE OPR has no plans to contact him again, visit him in person, or deliver another Warning Notice or similar document. *Id.*

Streever incorrectly asserts that a DHS spokesperson announced that DHS had an "ongoing" investigation into Streever. Pl. Opposition to Defendants' Mot. to Dismiss or Transfer ("Pl. Opp." at 2, 10). Streever's Complaint includes the misstatement that "DHS issue[d] a public statement five months later stating it is still conducting an 'ongoing investigation' into Streever's three-paragraph email." Compl. at 16. This assertion twists a DHS spokesperson's words, who functionally gave a reporter a no-comment response. As actually written in the NPR article, NPR wrote in full about the DHS non-comment:

> DHS did not respond to questions about the case, including a request to confirm that the email that triggered the HSI agents to visit David Streever was the same Jan. 26 email reviewed by NPR. The department gave NPR a statement that said: "ICE investigates all credible threats towards its employees and officers, including threats to the ICE Director. As a matter of policy, we do not comment on any ongoing investigations."

*See* Jude Joffe Block, NPR, https://www.npr.org/2026/07/01/nx-s1-5874124/dhs-tracks-ice-critic (dated July 1, 2026) (last accessed Aug. 4, 2026). Similarly, Streever misreads a post on DHS' X account that likewise did not specifically acknowledge an investigation into Streever, but just stated generically that "ICE investigates all credible threats towards its employees and officers." Pl. Br. at 10 (citing Homeland Security (@DHSgov), X (July 6, 2026, 3:06 PM),

https://x.com/DHSgov/status/2074208454974267678). Thus, there is no basis to conclude that the Government ever confirmed specifically that it had an ongoing investigation into Streever. In fact, the Goodwin Declaration states the opposite. Goodwin Decl. ¶¶ 13–15. Agent Henry finished her investigation after attempting to meet with Streever and ICE OPR closed its investigative file on June 30. *Id.* Before the two statements that Streever points to, ICE OPR had already concluded its investigation. This happened before Streever sued on July 6, 2026. ECF No. 1.

## II.    **Procedural History**

Streever filed a two-count Verified Complaint alleging First Amendment violations: a violation of his right to free speech and to petition (Count I) and a retaliation claim (Count II). Compl. ¶¶ 114–150.

As relief, Streever seeks four kinds of declaratory relief: (1) that his speech is protected by the Speech and (2) Petition Clauses of the First Amendment; (3) that "Defendants' issuance of 'WARNING NOTICE' documents is sufficient to chill a person of ordinary firmness from engaging in expression protected by the First Amendment"; and (4) that "Defendants' acts of coercion and retaliation, as described in this Complaint, violate Streever's First Amendment rights." *Id.* at 24 ("Prayer for Relief"). The Complaint also seeks an injunction barring "Defendants, their officers, agents, servants, and employees, and any persons or entities acting in concert with Defendants, from taking any further actions, formal or informal, to coerce, threaten, retaliate against, or intimate repercussions directly or indirectly to Plaintiff Streever for his protected speech and petitioning activity (including without limitation the speech and petitioning activity in his January 26, 2026 email) in violation of his constitutional rights," overlapping as both preliminary and permanent relief. *Id.* The Complaint also seeks to enjoin Defendants and anyone acting in concert with them "from taking any further steps in reliance on Streever's receipt

of the 'WARNING NOTICE,'" overlapping as both preliminary and permanent relief, plus attorneys' fees and costs. *Id.* at 24-25. Streever does not seek money damages.

One day after suing, Streever moved for a preliminary injunction. ECF No. 9. As relief, Streever seeks a preliminary injunction of the same kind of injunctive relief sought in the Complaint. ECF No. 9-3.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To obtain such emergency relief, the movant must show that (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Id*. The latter two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Supreme Court has held that at least the second factor—irreparable harm—must be likely and "not just a possibility." *Winter*, 555 U.S. at 20.

Before *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 326 (D.D.C. 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). The D.C. Circuit has not had occasion to conclusively decide whether that sliding scale survives *Winter* and *Nken*. *Make the Road N.Y. v. Mullin*, --- F.4th. ---, 2026 WL 1792978, at *5 (D.C. Cir. Jun. 23, 2026). The Supreme Court has made clear, however, that "[t]he default rule is that a plaintiff seeking a preliminary injunction must make a clear showing" as to each *Winter* element. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). Following *Winter*, courts have recognized that the sliding scale approach is no longer viable and that each of the factors is now an "independent, free-standing requirement." *Sherley v.*

- 9 -

*Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (Kavanaugh, J., concurring); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 16-17 (D.D.C. 2016) (sliding scale approach is "highly questionable," and a plaintiff "bears the burden of persuasion on all four preliminary injunction factors").

If the Court concludes that a claim fails as a matter of law, on a point of jurisdiction or the merits, then a preliminary injunction is inappropriate. *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017). "So in evaluating the likelihood-of-success question for the purpose of ruling on a request for interim relief, courts may consider both the likelihood that they have jurisdiction and the likelihood that the claim will succeed on the merits," and, "[i]f they conclude that a claim fails on either ground, they must deny interim relief." *Mullin v. Doe*, 609 U.S. ___, 2026 WL 1825840, at *11 (U.S. Jun. 26, 2026) (plurality decision). Indeed, if the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Because preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). A showing of a strong likelihood of success on the merits can still lead to the denial of preliminary injunctive relief if the party fails to make a sufficient showing of irreparable injury. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *see also Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) ("Because the Plaintiffs are likely to succeed on the merits of their § 1231 claims, we apply the other preliminary injunction factors to decide whether the Plaintiffs are entitled to relief on those claims").

**ARGUMENT**

**I.     Streever Cannot Show a Clear Likelihood of Success on the Merits**

    **A.     The Claims Fail at the Threshold**

        1.     Streever's Complaint Should Be Dismissed for Improper Venue or Transferred

Streever improperly laid venue here.  Thus, his Complaint should be dismissed per Federal Rule of Civil Procedure 12(b)(3).  Or, in the alternative, the Court should transfer this case to the jurisdiction where this case could have been brought and where the interests of justice support that it be heard: Streever's home jurisdiction in the Western District of New York, housing his home's Rochester Division.  Thus, with the Complaint subject to dismissal or transfer, the Court should deny the motion for preliminary injunction.  For this argument, Defendants refer the Court to their motion to dismiss, or, in the alternative, to transfer, at ECF No. 17.  Streever filed his opposition to this motion on August 3, ECF No. 19, and Defendants will file their reply on or before August 10, 2026.

To this motion to dismiss or transfer argument, Defendants add only two facts here: Agents Henry and Brodie worked out of the ICE OPR office in Jersey City and Agent Pitts worked at John F. Kennedy International Airport in New York…far afield from Washington, D.C.  Goodwin Decl. ¶¶ 8, 12.  These facts further support transfer.

        2.     Streever Fails to Plead Sufficient Facts to Establish Standing for a Prospective Injunction

Streever has not addressed standing.  Standing is a necessary predicate to any exercise of federal jurisdiction; when it is lacking, the dispute fails to present a concrete case or controversy under Article III.  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133-34 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).  To establish standing, Plaintiffs must demonstrate that they suffered an injury-in-fact, specifically an injury that is "concrete,

particularized, and actual or imminent"; the injury is "fairly traceable to the challenged action"; and that it is "likely," not speculative; and the injury is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (citation modified).  Plaintiffs bear the burden of establishing each element.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Standing is "not dispensed in gross."  *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation modified).  "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Id*. (citation modified).

When seeking solely prospective relief—as Streever does in his Complaint and motion for preliminary injunction—to have standing, plaintiffs must show that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up); *see also Lyons*, 461 U.S. at 105, 109; *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991) ("In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries."); *see also Worth v. Jackson*, 451 F.3d 854, 858 (D.C. Cir. 2006) ("While HUD's policies did allegedly injure Worth in the past, he seeks no relief for such injuries. . . .  Instead, the basis for both his claims is that he intends to apply for new positions and promotions. . . .  For standing purposes, then, we limit our inquiry to determining whether that prospective injury qualifies as an injury in fact." (citation modified)).  When a plaintiff seeks prospective injunctive relief, "past injuries alone are insufficient to establish standing."  *In re Navy Chaplaincy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012); *see also Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) ("Because [plaintiff's] complaint seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury." (citation modified)).  "Injunctions . . . will not issue to

- 12 -

prevent injuries neither extant nor presently threatened, but only merely 'feared.'" *Exxon Corp. v. FTC*, 589 F.2d 582, 594 (D.C. Cir. 1978).

An "allegation of future injury" to support the injury-in-fact element of standing "passes Article III muster only if it is certainly impending, or there is a substantial risk that the harm will occur." *In re Off. of Pers. Mgmt. Data Sec. Breach Litig. ("OPM")*, 928 F.3d 42, 54 (D.C. Cir. 2019) (citation modified). In addition to being "certainly impending," *Kareem*, 986 F.3d at 865, those allegations of future injury, moreover, must be "particular and concrete." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109 (1998). The future injury requirement "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that 'allegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up; quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also Summers*, 555 U.S. at 493 (explaining that the threat of future injury cannot be "conjectural or hypothetical"). Thus, a plaintiff cannot establish standing for prospective relief based on "mere 'some day intentions' to engage in the conduct they claim will cause them injury." *Navy Chaplaincy*, 697 F.3d at 1176 (quoting *Lujan*, 504 U.S. at 564).

*Lyons* controls the outcome of this case. There, the plaintiff alleged that police officers had placed him in a chokehold during a traffic stop "without provocation or justification" and sought an injunction limiting the use of chokeholds to certain circumstances. *See Lyons*, 461 U.S. at 97-98. The plaintiff's standing to seek an injunction "depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Id*. at 105. The plaintiff failed to satisfy that standard because his complaint did "nothing to establish a real and immediate

- 13 -

threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id*. Although the plaintiff also alleged that the police "routinely apply chokeholds in situations where they are not threatened by the use of deadly force," the Court found that this allegation "falls short of the allegations that would be necessary to establish a case or controversy between these parties." *Id*. Thus, since the plaintiff had not shown that he was "realistically threatened by a repetition of his experience" in the "reasonably near future," the Court held that he "has not met the requirements for seeking an injunction in a federal court." *Id*. at 108-09.

*Lyons*' rule governing prospective injunctive relief applies to First Amendment claims. *See Comm. in Solidarity with the People of El Salvador v. Sessions* ("*CISPES I*"), 705 F. Supp. 25, 26-27 (D.D.C. 1989) (citing *Lyons*, 461 U.S. at 111); *Zieper v. Reno*, 111 F. Supp. 2d 484, 488 (D.N.J. 2000) (citing *Lyons*, 461 U.S. at 101-02). And the rule from "*Lyons* applies to both injunctive and declaratory relief[.]" *Jefferson v. D.C.*, Civ. A. No. 22-1436 (RC), 2023 WL 4250118, at *3 (D.D.C. June 29, 2023) (also quoting, in parenthetical, *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) ("*Although* Lyons and its predecessors involved injunctive relief, whereas [Plaintiff] seeks declaratory relief, we do not distinguish *Lyons* on this basis.")); *Zieper*, 111 F. Supp. 2d at 489. That means Streever must establish standing under *Lyons* for his Complaint's claims for both declaratory and injunctive relief; that is, he must show a "real or immediate threat that [he] will be wronged again." *Lyons*, 461 U.S. at 111.

Furthermore, when an investigation has concluded, even an illegal one, plaintiffs lack standing for prospective relief. *See Comm. In Solidarity with the People of El Salvador v. Sessions* ("*CISPES II*"), 738 F. Supp. 544, 547 (D.D.C. 1990), *aff'd*, 929 F.2d 742 (D.C. Cir. 1991)

- 14 -

("*CISPES III*").    The Court in *CISPES II* found that the plaintiffs lacked a constitutionally cognizable injury when the FBI's years-long investigation had concluded, so their "allegations of injury" were "too speculative." *Id*.

The plaintiffs had the same obstacle in *Zieper v. Reno*, 111 F. Supp. 2d 484, 487–91 (D.N.J. 2000).  There, the plaintiff filmmaker raised First Amendment claims because after he released a film online, the police worked to get him to take the movie down.  He received a phone call from a police officer at the door of his home with FBI agents who informed him they wanted to speak with him about the film . An FBI agent called him that same night who asked if he could prevent people from viewing his film and that he call a television station to stop it running a story about the film.  An FBI agent called him again the next day, the FBI dispatched agents to plaintiff's home a second time, and a Department of Justice official publicly announced an investigation into plaintiff's activities.  As for the plaintiff owner of the website hosting the film, the FBI agent and an Assistant United States Attorney called, they told him that they had asked the business hosting his website to take his website down, they asked plaintiff website owner to disable the link to the film on his website (and he complied), the Assistant United States Attorney went further and asked if the film could be completely removed from the internet, so the plaintiff website owner deleted all the files and removed the website from his server.  *Id.* at 486-87.  Even with those facts, the *Zieper* court explained that the plaintiffs "cannot establish a credible threat of future harm" because "[t]he investigation of the Film by defendants has ended, and defendants do not intend to initiate any prosecution with regard to the Film.  Where an allegedly unconstitutional investigation has come to a close, '[t]o pass judgment on its legality would be to render an advisory opinion unless there were current consequences.'" *Zieper*, 111 F. Supp. 2d at 489 (quoting *CISPES III*, 929 F.2d

- 15 -

at 744).  The court found "*Lyons* is dispositive of plaintiffs' standing to seek prospective relief."

*Id.*

Similarly, when "a mother and former school board member[ ] alleged that federal and local government officials violated her right to free speech by engaging in a campaign of censorship and retaliation after she posted comments on Facebook[,]" the court affirmed denial of a preliminary injunction when the plaintiff could not establish future harm after the alleged "three-week period" of unlawful conduct by "the Government's alleged suppression campaign 'had considerably subsided.'"  *Reading v. N. Hanover Twp., New Jersey*, 124 F.4th 189, 192, 196 (3d Cir. 2024) (quoting *Murthy v. Missouri*, 603 U.S. 43, 57 (2024).  The court of appeals there relied on *Murthy v. Missouri*, where

> the Supreme Court considered a request for a preliminary injunction barring a host of government defendants from coercing the removal of plaintiffs' social media posts. Plaintiffs argued that because the Government defendants had coerced the removal of their social media posts in the past, there was a substantial risk they would do so again.  The Supreme Court disagreed.  And it did so because the Government's alleged suppression campaign "had considerably subsided" by the time plaintiffs sued, so even the strongest evidence of past censorship could not show "a likelihood of future injury traceable to" the Government defendants.

*Id.* (quoting *Murthy*, 603 U.S. at 71–72).

*Lyons*' future injury requirement likewise disposes of Streever's standing.  Streever has not even attempted in his motion to show a "real and immediate threat" that he will suffer any future harm. *Lyons*, 461 U.S. at 105.  Agent Henry determined that ICE did not need to further investigate Streever, determined that all investigative avenues had been exhausted, and so ICE OPR closed its investigation.  Goodwin Decl. ¶¶ 13-14.  With its investigation closed, ICE OPR does not contemplate any further investigation into Streever regarding his January 2026 email to Lyons. *Id.* ¶ 15.  As such, ICE OPR has no plans to contact him again, visit him in person, or deliver another Warning Notice or similar document. *Id.*  Given these facts, Streever cannot show a clear

likelihood of success on the merits that he has standing because he faces no "real and immediate threat" that he will suffer any future harm. *Lyons*, 461 U.S. at 105.

Streever does not bear his burden to establish standing by alleging vaguely that he wants to engage in future First Amendment activity. Compl. ¶¶ 108–110. "Such 'some day' intentions— without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (emphasis in original). In *CISPES I*, where the court denied a preliminary injunction motion, the plaintiff never specified a future First Amendment harm. And in *Zieper*, the court found the plaintiffs' declarations insufficiently specific when they alleged "I intend to engage in similarly provocative and controversial films in the future[,]" and that "I intend to continue to host similarly provocative and controversial speech in the future." 111 F. Supp. 2d at 489. Indeed, Streever's situation is unlike *Hospital Council v. City of Pittsburgh*, where the court declined to apply *Lyons* because it "d[id] not present the type of 'shadow or threat' of unfavorable government treatment . . . where plaintiff hospitals that failed to comply with the requests of the governmental defendants were assured that they *would* have their tax exempt status challenged, *would* be likely to run into difficulties in obtaining zoning approvals, and *would not* be offered the opportunity to provide services to the defendants." *Zieper*, 111 F. Supp. 2d at 489 (citing *Hosp. Council of W. Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 85 (3d Cir. 1991)) (emphases in original). Here, no one said that if Streever again wrote an email to Todd Lyons that he would be arrested, prosecuted, or otherwise punished. And given that the investigation has ended, Streever cannot show that he faces an immediate threat of future harm. "Absent a sufficient likelihood that [a plaintiff] will again be wronged in a similar way ... a federal court may not entertain a claim by any or all citizens that certain practices of law enforcement officers are unconstitutional." *Lyons*,

461 U.S. at 111.[2]  "[B]ecause the Government's alleged suppression campaign 'had considerably subsided' by the time [Streever] sued, . . . even the strongest evidence of past censorship could not show "a likelihood of future injury traceable to" Defendants.  *Reading*, 124 F.4th at 197 (quoting *Murthy*, 603 U.S. at 71-72).

Streever's claims are distinguishable from the D.C. Circuit's very recent affirmance of the issuance of a preliminary injunction in a First Amendment case—*Media Matters for America v. Paxton*, 138 F.4th 563, 569 (D.C. Cir. 2025).  There, after the organization published an unfavorable article about X.com (formerly Twitter), the D.C. Circuit found that the plaintiffs, the organization and a reporter, had standing because they were "the targeted victims of a campaign of retaliation" when the Texas Office of the Attorney General subjected them to "an investigation, a press release, and a sweeping [civil investigative demand ("CID")] for documents," which chilled plaintiffs' speech and materially altered their newsgathering and behavior.  *Id.* at 579–81.  The D.C. Circuit emphasized there that "the case is ripe for review because the campaign of retaliation is ongoing[,]" particularly in light of the pending CID.  *Id.* at 580.  It also found a clear likelihood of success on the retaliation claim, *id.* at 584, and imminent, irreparable harm due to an ongoing "campaign of retaliation" with the pending "CID and investigation" causing "current self-censorship in their reporting."  *Id.* at 585.  Here, however, Streever faces no CID, no comparable investigative request, no subpoena, and not even a pending request for an interview by law enforcement.

---

[2]    Streever cannot argue that standing should be relaxed in this First Amendment context, for the Supreme Court has rejected that argument.  Although the Court has sometimes relaxed standing for First Amendment challenges to statutes, in *Laird v. Tatum*, 408 U.S. 1 (1972), in which a group of plaintiffs challenged the Army's surveillance of and collection of material about public activities that were thought to have at least some potential for civil disorder, the Supreme Court held even in the First Amendment context, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  *Id.* at 13–14.

Nor can Streever rely on the "Warning Notice" to establish his standing. Compl. Ex. 2. That provides only an alleged past injury. It stated that he "may" have violated federal law and that he should "discontinue" any illegal behavior, if any. *Id.*; Goodwin Decl. ¶ 6. The Notice explained that, as a general matter, it is illegal to threaten to assault, kidnap, or murder a federal official. Compl. Ex. 2. Although the Notice stated "[r]eceipt of this Notice will be taken into consideration, should you continue to be involved in any criminal activities described above," this again only warns Streever not to violate federal law. *Id.* This Notice points to the past, not a future injury. Streever rests, then, on insufficient conclusory statements that he faces a future injury, failing to allege "'more than a sheer possibility' that [he] has standing to sue." *Air Excursions v. Yellen*, 66 F.4th 272, 278 (D.C. Cir. 2023) (citing *Iqbal*, 556 U.S. at 678).

Instead, Streever relies on a nonjusticiable self-inflicted injury. Although Streever claims he has self-censored, Compl. ¶¶ 108–10, Streever "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 410 (citations omitted). The D.C. Circuit has explained that "[a]ll of the Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself." *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984). Indeed, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Therefore, Streever's allegations that he has self-censored do not provide him with standing.

Streever seeks to prevent further government visits or consequences based on one completed visit to his home, an attempted visit to his hotel, and a few attempted phone calls. The

facts provided identify no planned return visit, prosecution, or other impending action concerning his email. And ICE states that its investigation ended, and it plans no further action toward Streever. Goodwin Decl. ¶ 15. The alleged chill therefore does not show that the Defendants' conduct is likely to recur or that he faces a specific future consequence. Without that showing, Streever has failed his burden to establish standing sufficient to support a preliminary injunction.

In sum, Streever's allegations "falls far short of the allegations that would be necessary to establish a case or controversy between these parties." *Lyons*, 461 U.S. at 105. As such, "a favorable decision" from this Court would not "likely" redress Plaintiff's alleged injury. *Friends of Animals v. Jewell*, 828 F.3d 989, 991–92 (D.C. Cir. 2016). Accordingly, the Court should deny his motion for preliminary injunction due to his lack of standing.

3.         <u>Streever's Request for Preliminary Injunctive Relief Is Moot Because ICE OPR Concluded Its Investigation</u>

Under Article III, "[t]he plaintiff's personal stake in the controversy between the parties must continue to exist throughout the duration of the case or it becomes moot. This limitation on the jurisdiction of federal courts requires the Court to settle only those legal questions that will 'affect[ ] the behavior of the defendant towards the plaintiff.'" *CISPES II*, 738 F. Supp. at 545 (citing *Sosna v. Iowa*, 419 U.S. 393, 402 (1975), then quoting *Hewitt v. Helms*, 482 U.S. 755 (1987) (alteration in original)). *CISPES II* is instructive. There, plaintiffs investigated by the FBI for alleged terrorist activity sued under the First Amendment. *Id.* at 545. When the Government explained that the investigation had concluded, the Court granted a motion to dismiss based on mootness. *Id.* The case was also moot because the plaintiffs in *CISPES II* sought relief that the Government "recover, collect and seal all copies of FBI files and records relating to the CISPES investigation and any of its spinoffs." *CISPES II*, 738 F. Supp. at 545. The Court found that this request for relief was mooted when the Government agreed to dispose of all records through

- 20 -

archiving with restricted access in the National Archives. *Id.* at 545-46. (Because Streever does not seek this relief regarding archiving or destruction of records, that does not distinguish the case.) The D.C. Circuit affirmed the dismissal for mootness, explaining that "the alleged harm resulting from the FBI's possession of the information necessarily ceased when the FBI relinquished the files. It is of no consequence that the FBI, rather than destroying the files, turned them over to the Archives. That is the relief plaintiffs requested." *CISPES III*, 929 F.2d at 744. The D.C. Circuit rejected the argument that the mere existence of the investigation in the first place meant an Article III case or controversy persisted:

> Plaintiffs' challenge to the constitutionality of the FBI's investigation could not alone satisfy the requirement. The investigation ended years ago. To pass judgment on its legality would be to render an advisory opinion unless there were current consequences. In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries. Current or future harm serves to keep the controversy alive. If the possibility of continuing injury disappears while the lawsuit is pending, the complaint ordinarily should be dismissed as moot.

*Id.* (citations omitted).

With the conclusion of ICE's investigation, Streever's case became just as moot as that in *CISPES II*. According to the Goodwin Declaration, Agent Henry's report stated that ICE OPR Jersey City had exhausted all investigation leads and closed the case. Goodwin Decl. ¶ 14. This occurred before Streever sued on July 6, 2026. With the investigation over, the Court need not enter an injunction preventing Defendants from taking any further actions against "Streever for his protected speech and petitioning activity in his email dated January 26, 2026" or "due to his protected speech or petitioning activity," and there is no need that Defendants be "enjoined from taking any further steps in reliance on Streever's receipt of the 'Warning Notice[.]'" Pl.'s Proposed Order (ECF No. 9-3). Moreover, Streever cannot show a reasonable likelihood of recurrence.

Nor does Streever's request for declaratory relief save his claims from mootness.  As the

D.C. Circuit explained in a First Amendment case,

> Where it is so unlikely that the court's grant of declaratory judgment will actually relieve the injury, the doctrine of prudential mootness—a facet of equity—comes into play.  This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power. Declaratory relief, like other forms of equitable relief, is discretionary.   The Declaratory Judgment Act states only that a court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201 (1988).  Where it is uncertain that declaratory relief will benefit the party alleging injury, the court will normally refrain from exercising its equitable powers.  This is especially true where the court can avoid the premature adjudication of constitutional issues.

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019–20 (D.C. Cir. 1991) (other citations omitted).

Here, a declaration that Defendants violated Streever's rights will not "actually relieve" his alleged

injury under *Penthouse*.  So Streever cannot show a clear likelihood of success that his request for

declaratory relief is not moot.  Especially when such a finding would require the "premature

adjudication of constitutional issues," the mootness issue counsels against issuing preliminary

relief.  *Id.*  The Court in *CISPES II* likewise held that, on the merits of the First Amendment claim,

a request for declaratory relief amounted to an ask for an impermissible advisory opinion—a

request did not save the claims from mootness: "The plaintiffs also seek a declaratory judgment

that the defendants violated their constitutional rights and contend that this Court should rule on

this issue even if it determines that there is no further relief that this Court could order against the

defendants. However, to proceed with the constitutional issue solely for a symbolic vindication of

plaintiffs' rights regardless of the availability of further relief is precisely the judicial activity or

advisory opinion which is prohibited under article III."  *CISPES II*, 738 F. Supp. at 546 n.1.  When

the D.C. Circuit affirmed, it explained that when "[t]he investigation ended years ago … pass[ing]

judgment on its legality would be to render an advisory opinion…."  929 F.2d at 744.  These

mootness rules similarly apply here.

By contrast, the voluntary-cessation exception to mootness does not apply. That is because ICE closed its investigation before the lawsuit began. Goodwin Decl. ¶¶ 13-14. Under this exception, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" because "[i]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189 (2000) (internal citations and quotation marks omitted). "That said, '[i]n order for this exception to apply, the defendant's voluntary cessation must have arisen because of the litigation.'" *Leonard v. Dep't of Def.*, 38 F. Supp. 3d 99, 105 (D.D.C. 2014), *aff'd*, 598 Fed. App'x 9 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F.Supp.2d 147, 161 (D.D.C. 2011)). "[T]he voluntary-cessation exception . . . 'does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.'" *Leonard*, 598 Fed. App'x at 10 (quoting *ACLU of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013)); *see also Wyo. Outdoor Council v. Dombeck*, 148 F.Supp.2d 1, 8 n. 1 (D.D.C. 2001) ("[T]he voluntary cessation doctrine does not apply when the challenged activity stops for reasons unrelated to litigation."). The timeline here does not support applying the voluntary-cessation exception. Agent Henry and ICE OPR concluded their investigation June 30, 2026. Goodwin Decl. ¶¶ 13-14. On July 6, 2026, Streever filed his Complaint. Thus, Streever cannot argue that "[his] lawsuit caused a voluntary cessation of the activity to which [he] objected"; instead, the investigation ended "independently of the lawsuit." *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 816 (9th Cir. 1995).

Accordingly, the end of ICE OPR's investigation has mooted Streever's requests for declaratory and injunctive relief advanced in his Complaint. Therefore, the Court should deny his motion for preliminary injunction.

**B.    The First Amendment Speech, Petition, and Retaliation Claims Fail**

"To establish a claim for retaliation under the First Amendment, an individual must prove (1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)).  "The improper motive must be a but-for cause of the government action, 'meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" *Comm. on Ways & Means v. Dep't of Treas.*, 45 F.4th 324, 340 (D.C. Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)). The Government is entitled to "the 'presumption of regularity,' under which 'courts presume' that public officers have 'properly discharged their official duties' unless there is 'clear evidence to the contrary.'" *Owlfeather-Gorbey v. Avery*, 119 F.4th 78, 86 (D.C. Cir. 2024) (quoting *United States v. Chemical Found.*, 272 U.S. 1, 14–15 (1926)).  The Goodwin Declaration shows Government officials exercising their duties in good faith.

Here, Defendants do not dispute that Streever's email to Lyons put words to his disagreements with a current administration official and that Agents Henry, Brodie, and Pitts attempted to speak with him about this email.  But Streever fails both the adverse action element and the element that the actions were motivated by retaliatory intent.  Because Streever's First Amendment claims are redundant, any separate "viewpoint discrimination," content discrimination, petition, chill, or prior restraint claims fail for the same reason the retaliation claim fails.  *See Bailey v. Fed. Bureau of Prisons*, 780 F. Supp. 3d 96, 124 (D.D.C. 2025) (dismissing "First Amendment retaliation claim" because it was "duplicative of [Plaintiff's] First Amendment claim").

- 24 -

1.       Streever Does Not Plead an Adverse Action

Law enforcement does not violate the First Amendment merely by investigating potential threats. Police proactively investigating does not create an adverse action, as multiple courts have explained. For example, in *CISPES I*, when the plaintiffs allegedly "engaged in political activities which resulted in their becoming subjects of an investigation conducted by the [FBI]," 705 F. Supp. at 25, the plaintiffs failed to show a clear likelihood of success on the merits for a preliminary injunction because "[i]f the basis of the First Amendment claim is simply that the investigation was without an adequate basis, the Court cannot conclude that plaintiffs are likely to succeed on the merits, since it is well settled that 'the FBI would not be violating the First Amendment itself ... if it decided to investigate a threat that was not so immediate as to permit punitive measures against the utterer.' The fact that an investigation fails to lead to an indictment or conviction does not create, in itself, a claim under the First Amendment." *Id.* at 29 (quoting *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1015–16 (7th Cir. 1984) (en banc)). Moreover, a detective committed no adverse action giving rise to a First Amendment retaliation claim when he told a plaintiff who had fierce disagreements with city employees that city employees did not want contact with her outside work "and that, depending on the circumstances of any future encounter, she could face criminal charges." *Ortolano v. City of Nashua*, 768 F. Supp. 3d 277, 283 (D.N.H. 2025). Police "routinely give these sorts of proactive warnings to private citizens in order to prevent their animosity from escalating to criminal conduct." *Id.* In *Ortolano*, the detective clarified that not all behavior would be criminal; rather he accurately warned that an escalated situation—such as one involving harassment, disorderly conduct, or criminal threats—would violate the law; the detective gave an accurate warning intended to prevent the dispute from escalating. *Id.* Such an accurate warning about the law would not deter a person of ordinary firmness from First Amendment activity. *Id.* at 283-84. There simply is no adverse action when

- 25 -

law enforcement informs a member of the public about the law. *See*, *e.g.*, *Robles v. Aransas Cnty. Sheriff's Dep't*, No. 2:15-CV-495, 2018 WL 1932742, at \*5–6 (S.D. Tex. Apr. 23, 2018) ("To the extent Mr. Robles truly believed that any future call to law enforcement, no matter how justified, would result in his arrest, this was an idiosyncratic, unreasonably literal interpretation of Deputy Campbell's words and is insufficient to raise a disputed factual issue as to whether a constitutional violation took place."), *aff'd sub nom. Robles v. Ciarletta*, 797 Fed. App'x 821 (5th Cir. 2019) (affirmed on qualified immunity grounds); *cf. Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 118 (D.D.C. 2005) (no adverse action based on "[plaintiff]'s allegations of a coordinated campaign of intimidation and harassment, and the allegations in the complaint concerning the government's purported attempts to chill [plaintiff]'s First Amendment rights" involving investigation into mailing of anthrax).

In sum, under these authorities, Streever has not pleaded an adverse action.

### 2. Streever Does Not Plead Causation

"[I]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Shuler v. Dicks*, Civ. A. No. 24-1292 (RDM), 2025 WL 894420, at \*7 (D.D.C. Mar. 24, 2025) (quoting *Nieves*, 587 U.S. at 398–99)); *see also US Dominion v. MyPillow, Inc.*, Civ. A. No. 21-0445 (CJN), 2022 WL 1597420, at \*11 (D.D.C. May 19, 2022) ("Here, Lindell fails adequately to allege a causal connection because he has pointed to no First Amendment protected speech of his own that Smartmatic targeted out of retaliatory animus."). Even were the Court to conclude that Streever has raised some inference of causation, the record still establishes that the challenged action would have been taken absent the asserted retaliatory motive and, accordingly, but-for causation is lacking. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 203 (2024) (Jackson, J., concurring) ("Requiring that causal connection to a retaliatory motive is important, because '[s]ome official actions adverse to . . . a speaker might

well be unexceptionable if taken on other grounds.'" (quoting *Hartman v. Moore,* 547 U.S. 250, 256 (2006))).

Streever fails to establish a retaliatory motive.  Per the Goodwin Declaration, ICE Agents Henry and Brodie went to Streever's house to investigate: to find out if he sent the email, to put eyes on him in a knock-and-talk, to evaluate if he presented a potential threat, and to close the loop on their investigation.  Goodwin Decl. ¶¶ 7, 10.  Because he was not home, Agent Henry and Pitts tried to speak with him at his New York City hotel and called him twice, never actually speaking with him.  *Id.* ¶¶ 10–12.  Under these circumstances, Streever has failed to dispel the "obvious alternative explanation," *Iqbal*, 556 U.S. at 677, that Agents Henry, Brodie, and Pitts investigated whether he presented a potential threat, not for his protected speech.

Streever's situation is unlike that in *Media Matters v. Federal Trade Commission*, No. 25-5302, 2025 WL 2988966, at *1 (D.C. Cir. Oct. 23, 2025) (denying stay pending appeal of preliminary injunction issued in First Amendment case).  There, "a pattern of litigation and information demands targeted at Media Matters had spanned virtually every day of the two years since it reported both that X had placed advertisements for technology companies next to antisemitic and hateful content and that Elon Musk had endorsed an antisemitic conspiracy theory."  *Id.* at *6.  Under that "unusual factual pattern," the Government failed to show that "it is likely to overturn the district court's tentative factual finding of a 'causal link' between Media Matters' protected speech and the Commission's issuance of its sweeping and unexplained" civil investigative demand under "the unique—and seemingly quite unprecedented—constellation of undisputed facts and circumstances compiled in this still-preliminary record . . . that Media Matters' protected speech likely caused issuance of the" civil investigative demand.  *Id.*  Thus, Streever has not shown causation with a retaliatory motive.

- 27 -

Moreover, the record supports a Government defense: "The government can avoid liability" for constitutional claims "by proving that it would have made the same decision without the impermissible motive." *Texas v. Lesage*, 528 U.S. 18, 20–21 (1999). As this Court has explained when considering a First Amendment retaliation claim, the Government "c[an] prevail here by showing, at a preponderance of the evidence standard, that it would" have taken the allegedly retaliatory action "even absent any prohibited retaliation." *Pinson v. United States Dep't of Just.*, 246 F. Supp. 3d 211, 230 n.19 (D.D.C. 2017). *Cf. Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (government "officials may still prevail if they establish that they would have made the same decision absent the protected conduct," applying the "same decision defense" to a prisoner's First Amendment retaliation claim) (citation omitted). On this record, the Government meets the same decision defense. The Goodwin Declaration described the investigation in detail above. The agents sought to identify if Streever sent the email, his intent, and whether he presented a threat—not to punish him for his speech. Goodwin Decl. ¶¶ 7–10. Streever has not presented contrary evidence.

Thus, at the preliminary injunction stage, Streever has not met his heavy burden to make a clear showing of a likelihood of success on his retaliation or other First Amendment claims.

**C.      Streever Cannot Seek Ultimate Relief in a Preliminary Posture**

"[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 397 (1981). That is because a preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex.*, 451 U.S. at 395). The purpose of preliminary injunctive relief "is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Trump v. Int'l*

*Refugee Assistance Project*, 582 U.S. 571, 579-80 (2017) (citation omitted). Thus, "[c]ourts in this Circuit have required the party seeking such a mandatory injunction to 'meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction.'" *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 398 (D.D.C. 2020) (quoting *Singh*, 185 F. Supp. 3d at 17).

Streever seeks "to radically transform the status quo, on an expedited basis." *Disability Rts. Council of Greater Wash. v. WMATA*, 234 F.R.D. 4, 7 (D.D.C. 2006). What he truly seeks is to turn this preliminary injunction motion into "the whole ball game." *Winter*, 555 U.S. at 33. But preliminary injunctions are meant to be more predictive than they are decisive. *See Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety and Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024) (citing cases). The overlap in relief sought in his motion for preliminary injunction and complaint is almost perfect. *Compare* Compl. at 24-25 ("Prayer for Relief") *with* Pl.'s Proposed Order (ECF No. 9-3). At bottom, Streever seeks to convert this action into a "hasty process" and ask the Court "to jump to conclusions." *Delaware State Sportsmen's Assoc.*, 108 F.4th at 200. That is simply not the purpose of preliminary injunctive relief. *See id.* at 197 (a "preliminary injunction is not a shortcut to the merits"); *see also Appalachian Voices v. FERC*, 139 F.4th 903, 929 (D.C. Cir. 2025) (Henderson, J., concurring) ("The lodestar for interim relief is preserving the status quo—not previewing the merits.").

The Court should deny Plaintiffs' attempt to end-run the judicial system and deny the motion on that basis alone.

## II.    Streever Cannot Demonstrate Imminent, Irreparable Harm

Even if Streever could show both standing and a clear likelihood of success on the merits, he fails to establish imminent, irreparable harm requiring this Court's immediate intervention. *See Santos v. Collins*, Civ. A. No. 24-1759 (JDB), 2025 WL 1823471, at *6 (D.D.C. Feb. 26, 2025)

("while standing and irreparable harm overlap, they are far from the same"); *Planned Parenthood of Greater New York v. HHS*, Civ. A. No. 25-2453 (BAH), 2025 WL 2840318, at \*9 n.6 (D.D.C. Oct. 7, 2025) (discussing the difference between "injury-in-fact standing" and the "irreparable harm inquiry," whereby "a plaintiff may satisfy standing requirements without meeting the imminent, irreparable harm requirement to obtain a TRO").  Indeed, notwithstanding a strong showing of a likelihood of success on the merits, a preliminary injunctive motion can still be denied if the moving party fails to make a sufficient showing of irreparable injury.  *CityFed Fin. Corp.*, 58 F.3d at 747; *see also Huisha-Huisha*, 27 F.4th at 733.

### A.    Streever Misstates the Imminent, Irreparable Harm Requirement

Streever wrongly rests his entire basis for imminent, irreparable harm on alleged past harm. Pl. Br. at 29–31.  That position misstates the law for a preliminary injunction.  Past harm does not suffice because "to obtain a preliminary injunction, a party must show that their First Amendment interests are either threatened or in fact being impaired at the time relief is sought." *Media Matters for Am.*, 138 F.4th at 585.

"[T]he degree of proof required for 'irreparable harm' is 'high,' and . . . a failure to surmount it provides 'grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.'" *California Valley Miwok Tribe v. Haaland*, Civ. A. No. 24-0947 (TSC), 2024 WL 4345787, at \*3 (D.D.C. Sept. 30, 2024) (quoting *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019)).  To meet the "high standard for irreparable injury," the D.C. Circuit has required a movant to show that the injury is "both certain and great; it must be actual and not theoretical," and that "[t]he injury complained of is of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)

(quoting *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (emphasis in original).

Importantly, the movant must "substantiate the claim that irreparable injury is 'likely' to occur." *Wis. Gas*, 758 F.2d at 674 (citation omitted). "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Id.* Rather, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* Thus, where the movant has premised its motion "upon unsubstantiated and speculative allegations of [redressable] injury," the court must deny the motion. *Id.* Courts in this Circuit "must faithfully and fairly apply that standard in all cases, regardless of how high the stakes or how worthy the cause." *All. for Retired Americans v. Bessent*, 770 F. Supp. 3d 79, 111 (D.D.C. 2025) (quoting *Standing Rock Sioux Tribe v. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 34 (D.D.C. 2016)).

## B.    Streever Has Not Established Imminent, Irreparable Harm

Streever fails to show imminent, irreparable harm of a real and immediate future injury now that the investigation has concluded. The mere allegation of deprivation of a constitutional right does not "constitute irreparable harm." *Hanson v. Dist. of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024). "Even in the sensitive areas of freedom of speech and religion, where the risk of chilling protected conduct is especially high, we do not 'axiomatically' find that a plaintiff will suffer irreparable harm simply because it alleges a violation of its rights." *Id.* (citing *Chaplaincy of Full Gospel Churches*, 454 F.3d at 302). Indeed, to obtain a preliminary injunction on a First Amendment free expression ground, the plaintiff must "demonstrate a likelihood that they are engaging or would engage in the protected activity the governmental action is purportedly infringing." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 302. That is because "the relevant

- 31 -

constitutional protection is not implicated without some corresponding individual conduct that faces a danger of chilling." *Id.*

Relying only on his past harms, Streever takes a *per se* approach to irreparable harm. But that skirts the exacting requirements a plaintiff must meet before one can be granted the "extraordinary remedy" of a preliminary injunction. *Id.* at 297 (citation modified). Allowing Streever to assume an imminent, irreparable injury functionally would return this Court back to the "sliding scale" approach that the Supreme Court expressly rejected. *See, e.g.*, *Starbucks Corp.*, 602 U.S. at 345-46 (citing *Winter*, 555 U.S. at 20). As this Court has observed, "a plaintiff must show 'that irreparable injury is likely in the absence of an injunction,' regardless of the plaintiff's likelihood of success on the merits of his claims." *Singh v. Carter*, 185 F. Supp. 3d 11, 20 (D.D.C. 2016) (quoting *Winter*, 555 U.S. at 22, and denying preliminary relief for failure to establish irreparable harm). Without the required showing of irreparable harm, Streever is not entitled to a preliminary injunction no matter the certainty of success on the merits or public interest. *See Planned Parenthood of Greater New York*, 2025 WL 2840318, at *1 (discussing denial of preliminary injunction for failure to establish irreparable harm); *Acosta v. Dist. of Columbia Gov't*, Civ. A. No. 20-1189 (RC), 2020 WL 2934820, at *2-5 (D.D.C. Jun. 3, 2020) (denying preliminary relief for failure to establish irreparable harm). Streever has pointed only to alleged injury from two ICE agents visiting his home, attempting to speak with him at a hotel, and calling him twice. As thoroughly explained, that past alleged harm does not satisfy the imminent, irreparable harm standard. For reasons that overlap with Streever's failure to establish standing for a prospective injunction, he has failed to establish imminent, irreparable harm because he lacks a real and immediate threat to any future protected speech. *See supra*, §§ I.A.2-3.

Nor can he make that showing. ICE's investigation concluded. Goodwin Decl. ¶¶ 13-14. ICE does not anticipate taking any further action towards Streever about his January 2026 email. *Id.* ¶ 15. And Streever does not allege that he has encountered law enforcement since they attempted to speak with him at his hotel in New York City. Streever has not shown, for instance, that the Government has engaged in a lengthy and protracted campaign to silence him accompanied by a sweeping civil investigative demand for documents like in *Media Matters*, 138 F.4th at 585. In short, Streever has not met his burden to show imminent, irreparable harm from future adverse consequences.

The Warning Notice merely admonished him not to engage in the "criminal activities described above," of course referring to the federal criminal statutes cited therein. Compl. Ex. 2. Streever has not stated his intention to "threaten to assault, kidnap and/or murder a federal official…," so he does not fall within the scope of the conduct that the Notice warns the reader to avoid. *Id.* Because Streever has not stated a future intention to threaten ICE officials, the Warning Notice has no forward-looking effect on him.

Finally, Streever does not explain why he needs preliminary relief "before [the C]ourt can issue final judgment." *AFL-CIO v. Sonderling*, Civ. A. No. 26-2061 (JEB), 2026 WL 1906727, at *6 (D.D.C. July 2, 2026). "'If a [judgment] on the merits can be [issued] before the injury would occur,' there is therefore 'no need for' emergency relief." *Id.* (quoting 11A Wright & Miller, Federal Practice & Procedure § 2948.1 (3d ed. Apr. 2026 update)). With no imminent threat to Streever's protected speech—not even a potential one—Streever has not shown why he needs preliminary relief now. He has not shown that imminent, irreparable harm is likely and "not just a possibility." *Winter*, 555 U.S. at 20.

In sum, Streever does not carry his heavy burden to establish imminent, irreparable harm.

- 33 -

III.     **The Balance of Equities and Public Interest Favor Denying Injunctive Relief**

Finally, granting a preliminary injunction would be contrary to the public interest. The balance of harms and the public interest elements of the injunctive relief test merge when the government is the opposing party, *Nken*, 556 U.S. at 435, and courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991); *see also Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), *appeal dismissed*, No. 23-7136, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025).

The public interest favors lawful, effective enforcement within constitutional limits. *Nken*, 556 U.S. at 435; *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018); *see also INS v. Legalization Assistance Proj.*, 510 U.S. 1301, 1305-1306 (1993) (recognizing that balance of equities favored the government because the order operated as "an improper intrusion by a federal court into the workings of a coordinate branch of the Government"); *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("Any time that the Government is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.")). Law enforcement needs to investigate potential threats. It is prudent to be cautious so that a genuine threat does not slip through. The Court is well aware that we are experiencing a dramatic increase in threats to public officials, including the President, Cabinet officials, judges, and law enforcement officers.

In that respect, ICE is no different. Goodwin Decl. ¶ 4. ICE experienced a dramatic increase in the level and volume of external threat activity directed towards leadership and its personnel beginning in February 2025. Much of the threat activity appears in social media, online

- 34 -

posts, and doxxing, but has since expanded to physical attacks on ICE facilities, employees, and households of employees.  Overall, ICE has experienced a 964% increase in threats against ICE officials—from 81 threats in fiscal year (FY) 2024 to 862 threats in FY 2025.  In FY 2025, ICE OPR investigated approximately 66 potential threats against senior leaders.  *Id.*

Real threats exist.  The Government needs to investigate those.  The preliminary injunctive relief Streever seeks would unnecessarily inhibit the Government's investigatory prerogative.  *See CISPES I*, 705 F. Supp. at 30 ("Although the interests at stake are genuine, the form in which they are presented is insufficient to persuade the Court that it would be in the *public* interest to impair the functioning of the FBI by means of an injunction, prior to a complete airing of the legal merits of the case in the course of ordinary litigation.").  In sum, the balance of equities and public interest tip decisively in Defendants' favor.

## IV.    The Requested Preliminary Injunction Is Overbroad

If the Court does issue a preliminary injunction, it should not issue the overbroad injunction that Streever requests against anyone that DHS or ICE may "act in concert with."  Pl. Proposed Order (ECF No. 9-3).  An injunction (if issued at all) should only apply to the three special agents who allegedly engaged in interactions with Streever and his wife.  Streever has not alleged anything that Secretary Mullin, Acting Director Venturella, or Director Fenton did to him.  Citing just their authorities over their respective offices does not establish their personal involvement or justify injunctive relief against them.

Here, Streever seeks an overbroad injunction not just against the named Defendants, but also "their officers, agents, servants, and employees, and any persons or entities acting in concert with Defendants."  Compl. at 24 ("Prayer for Relief").  Given that Streever seeks to prevent interference with his speech, and that he lives in the Western District of New York, he, in effect, seeks an injunction against all of the federal government in New York and elsewhere too.

- 35 -

Federal Rule of Civil Procedure 65(d)(1) requires an injunction to state its terms specifically and describe in reasonable detail the conduct restrained.  "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam).  Indeed, "[i]njunctive relief granted to a party in a lawsuit must be framed to remedy the harm claimed by the party."  *Nora v. Wolf*, Civ. A. No. 20-0993 (ABJ), 2020 WL 3469670, at *14 (D.D.C. June 25, 2020) (quoting *Aviation Consumer Action Proj. v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976)).  Furthermore, "[t]he injunction should be 'no broader than necessary to achieve its desired goals.'"  *Id.* (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994), and citing *Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006))).  Streever's request violates these rules.

Streever also seeks an overbroad injunction when he requests to prohibit formal or informal action that would "coerce," "threaten," "retaliate against," or "intimate repercussions" because of his speech. But a broad prohibition covering any future Government response to any of Streever's future speech risks operating as a generalized command to comply with the First Amendment rather than a specific description of prohibited acts.  And the proposed relief could also interfere with legitimate investigation of materially different future communications.  For example, the First Amendment does not protect true threats. *Counterman v. Colorado*, 600 U.S. 66, 72–82 (2023).  At minimum, any injunction should be limited to further Government action based solely on the January email and the Warning Notice.  It should preserve the Government's ability to investigate future conduct and should define the prohibited governmental conduct with sufficient precision to satisfy Rule 65(d).

- 36 -

## V.    Any Preliminary Injunction Issued Should Be Stayed

For the reasons stated above, the Court should deny Streever's Motion in its entirety. Nevertheless, if the Court issues any injunctive relief, Defendants respectfully request that the Court stay such relief pending the disposition of any appeal, or, at a minimum, administratively stay any such order for a period of seven days to allow the United States to seek an emergency, expedited stay from the Court of Appeals if an appeal is authorized by the Solicitor General.

## VI.    The Court Should Require Streever to Post Security

Should the Court issue any injunctive relief, the Court should also order Streever to post security.  The Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by the Government if they are later found to "have been wrongfully enjoined."  Rule 65(c).  The D.C. Circuit recently clarified that "injunction bonds are generally required."  *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025), *reh'g en banc denied* (July 16, 2025).  If the Court issues an injunction here, the Court should require Streever to post an appropriate bond commensurate with the scope of any injunction.  *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (a district court has "broad discretion . . . to determine the appropriate amount of an injunction bond").

*    *    *

## CONCLUSION

For these reasons, the Court should deny Plaintiff David Streever's Motion for Preliminary

Injunction.  A proposed order is attached.

Dated:  August 5, 2026                  Respectfully submitted,

                                        JEANINE FERRIS PIRRO
                                        United States Attorney

                                        PETER C. PFAFFENROTH
                                        Chief, Civil Division

                                        By:        */s/ Mason D. Bracken*
                                             MASON D. BRACKEN
                                             DIMITAR GEORGIEV, D.C. Bar
                                             #1735756
                                             Assistant United States Attorneys
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-7822
                                             mason.bracken@usdoj.gov
                                             dimitar.georgiev-remmel@usdoj.gov

                                        *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID STREEVER,<br><br>              Plaintiff,<br><br>     v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, *et al.*,<br><br>              Defendants. | Civil Action No. 26-2356 (RC) |

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's Motion for Preliminary Injunction, Defendants'

Opposition, and the entire record herein, it is hereby

ORDERED that Plaintiff's Motion is DENIED.

SO ORDERED:

_____                                    _____

Date                                                                          RUDOLPH CONTRERAS
                                                                                 United States District Judge