UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID STREEVER,

Plaintiff,

v.

MARKWAYNE MULLIN, in his official
capacity as Secretary of the Department of
Homeland Security, et al.,

Defendants.

Civil Action No. 26-2356 (RC)

## **DECLARATION OF BRENT L. GOODWIN**

I, Brent L. Goodwin, does hereby state and declare:

1.      I am the Assistant Director for OPR Investigations, within the Office of Professional Responsibility ("OPR") at Immigration and Customs Enforcement ("ICE") under the U.S. Department of Homeland Security ("DHS"). In this role, I am responsible for the agency's integrity program and investigating allegations of criminal and serious misconduct. In addition, I oversee allegations of detainee assaults, critical incidents, and uses of force; detainee escapes; employee bribe attempts; other investigative matters; and external threats against ICE personnel, including its senior leadership. It is in this last capacity that I provide this declaration.

2.      I have served in several leadership roles within ICE in Homeland Security Investigations ("HSI") in both Headquarters and the field. Prior to my current position, I served as the Assistant Special Agent in Charge for HSI Washington DC, with oversight of multiple priority programs in Northern Virginia and the District of Columbia and HSI's investigative portfolio in West Virginia and the state of West Virginia. I have also served as the Division Chief for the Transnational Organized Crime Division and led numerous agency operational programs, which included Illicit

Finance and Proceeds of Crime, Identity and Benefit Fraud, Labor Exploitation, Contraband Smuggling, and the Bulk Cash Smuggling Center. As the Acting Deputy Assistant Director for the HSI Operational Technology and Cyber Division ("OTCD"), I oversaw several major operational and administrative programs that directly supported technological and investigative activities for HSI. While in OTCD, I held positions as the Division Chief for Technical Operations and Systems Development, the Unit Chief for Technical Operations, and the Section Chief for Investigative Intercepts.

3.      I base this declaration on my personal knowledge, my knowledge of documents kept by ICE in the course of ordinary business, information made available to me in the performance of my official duties, including discussion with others within ICE concerning the documents and events underlying and related to the Complaint filed in this case by Plaintiff David Streever, and my understanding of the issues being litigated in the above-captioned case.

4.      By way of background, ICE experienced a dramatic increase in the level and volume of external threat activity directed towards the agency's Senior Leaders[1] and its personnel beginning in February 2025. Much of the threat activity appears in social media, online posts, doxxing, and has since expanded to physical attacks on ICE facilities, employees, and households of employees. Based upon data made available to me in my preparation for writing this declaration, overall, ICE has experienced a 964% increase in threats against ICE officials—from 81 threats in fiscal year (FY) 2024 to 862 threats in FY 2025. In FY 2025, ICE OPR investigated approximately 66 potential threats against senior leaders.

---

[1] Director, Deputy Director, Executive Associate Directors and Deputy EADs of Enforcement and Removal Operations, Homeland Security Investigations, and Management and Administration ; the Assistant Directors of HSI; the Associate Director and Deputy Associate Director for OPR; and the Principal Legal Advisor, the Executive Deputy Principal Legal Advisor, and Deputy Principal Legal Advisor of OPLA.

5.      ICE has designated personnel from both OPR and HSI to have responsibility for reviewing and identifying threats and dangerous activities to ICE personnel. This includes threats and dangerous activities that can disrupt ICE in executing its lawful activities. OPR's responsibilities include addressing threats to ICE Senior Leadership and the doxxing of ICE personnel. ICE personnel utilize government and commercially developed tools to provide a variety of methods for monitoring publicly available information on social media sites that provides agency situational awareness, while respecting individual users' privacy settings.

6.      With regard to potential threat investigations, ICE personnel also utilize traditional law enforcement investigation techniques, which include but are not limited to a consensual interview between a law enforcement officer and a person, where the person is free to leave or can refuse to answer questions. ICE law enforcement officers may also issue a Warning Notice letter to the individual of the investigation providing that he or she *may* be in violation of federal law,

7.      In the present matter, On January 26, 2026, Mr. David Streever sent an email directly to the ICE Senior Official Performing the Duties of the Director, Todd M. Lyons. It is attached to the Plaintiff's complaint as Exhibit 1. This email was forwarded to OPR because it was determined that the email had potential threatening undertones to ICE personnel, potentially presenting a safety concern. This lead referral was assigned to Abbi Henry, Senior Special Agent, ICE Office of Professional Responsibility ("SSA" Henry).  ICE OPR did not have any information about Mr. Streever when the email came in, so OPR determined that it needed to conduct an ICE investigation.

8.      SSA Henry and SSA David Brodie work in the ICE OPR office in Jersey City, New Jersey, just outside of New York City.

9.      Based upon my review of the ICE records, SSA Henry conducted an investigation that included reviewing publicly available information based upon Mr. Streever's social media presence. SSA Henry also reviewed traditional law enforcement sources for information regarding Mr. Streever.

10.     On June 23, 2026, SSA Henry and SSA Brodie, attempted to conduct a consensual interview with Mr. Streever at his residence in Rochester, New York. The purpose of the consensual interview was to confirm that Mr. Streever was the actual author of the email and that no other persons had access to the email address from which the email was sent. A consensual interview would allow the SSAs to assess Mr. Streever's intentions behind the email to Acting Director Lyons. In addition, a consensual interview allows SSAs to assess in-person the veracity of an individual's statements. This in-person contact would also allow SSAs to investigate whether or not Mr. Streever presented a threat..

11.     Upon their visit to Mr. Streever's home, SSA Henry spoke with Mr. Streever's spouse, Hilary Streever, who informed the SSAs that Mr. Streever was in Norway until a few days later, Friday, June 26, 2026. Mrs. Streever stated that she did not believe that Mr. Streever would write a threatening email to Acting Director Lyons. SSA Henry left a Warning Notice letter with SSA Henry's contact information and requested that Mrs. Streever provide that document to Mr. Streever. SSA Henry wrote her name, HSI, and her phone number on the back of the Warning Notice letter she gave to Mr. Streever's spouse.

12.     The SSAs confirmed that Mr. Streever had a nonstop flight booked for Thursday, June 25, 2026, from Finland to the John F. Kennedy International Airport ("JFK airport") landing at approximately 7:10 p.m. SSA Henry, with the assistance of the HSI Special Agent Trevor Pitts (SA Pitts), the duty agent at JFK airport, attempted to meet with Mr. Streever upon his arrival at the

airport. However, Mr. Streever cleared Customs and Border Protection (CBP) without being identified or being stopped. SSA Henry and SA Pitts obtained the local hotel which Mr. Streever had listed with CBP for his inbound destination, which was located near JFK airport. SSA Henry and SA Pitts went to the hotel in an attempt to make contact with Mr. Streever for the purposes described in paragraph 10. The hotel staff refused to advise whether Mr. Streever had checked in or not. In addition, SSA Henry and SA Pitts each attempted to call Mr. Streever on two telephone numbers that were not answered.

13.    Based upon the steps taken in the investigation, on June 30, 2026, SSA Henry wrote a report of investigation to serve as a closing report summarizing the investigation, their attempts to contact Mr. Streever, and stated the ICE OPR investigation was closed. SSA Henry submitted the closing report to management on that same day.

14.    SSA Henry stated in her June 30, 2026, closing report that OPR Jersey City had exhausted all investigative leads and that the case is closed. On July 6, 2026, Mr. Streever filed his Complaint in federal court in this action.  *See* ECF No. 1 (Compl.).

15.    With its investigation closed, ICE OPR does not contemplate any further investigation into Mr. Streever regarding his January 2026 email to Lyons.  As such, ICE OPR has no plans to contact him again, visit him in person, or deliver another Warning Notice or similar document.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

BRENT L GOODWIN    Digitally signed by BRENT L GOODWIN
Date: 2026.08.05 13:08:05 -04'00'

BRENT L. GOODWIN
Assistant Director
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Office of Professional Responsibility, Investigations