**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DAVID STREEVER,

                    *Plaintiff*,

        v.

MARKWAYNE MULLIN, in his official
capacity as Secretary of the Department of
Homeland Security, et al.,

                    *Defendants*.

Civil Action No.: 1:26-cv-02356-RC

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

    I.     Plaintiff Streever Has Established Standing Due to the Present, Concrete, and Objective Harms Defendants' Conduct Is Causing Him. ..............................................................................................................2

          A.    Defendants' conduct, including the Warning Notice, is causing ongoing harm, satisfying the injury-in-fact requirement for standing. ......................................................................2

                 1.    The investigation and unwithdrawn Warning Notice are causing continuing, present adverse effects. .............................3

                 2.    Streever also has standing under Defendants' future-injury theory. ........................................................................6

          B.    Defendants' closure of an investigative file does not moot the case. ......................................................................................8

    II.    Streever Is Likely to Succeed on Each of His Two First Amendment Claims. ................................................................................10

          A.    Defendants concede the First Amendment protects Streever's speech, shifting the burden to the government. ........................10

          B.    Streever is likely to succeed on his First Amendment coercion claim. ......................................................................11

                  1.    Defendants' tactics and Warning Notice are coercive actions that violate the First Amendment. ....................................11

                  2.    Coercion claims do not require retaliatory animus. ......................13

          C.    Streever is also likely to succeed on his First Amendment retaliation claim. ......................................................................14

                  1.    Defendants' conduct and Warning Notice satisfy the objective "ordinary firmness" standard. ....................................15

                  2.    The fruitless investigation does not negate retaliatory causation. ...................................................................15

    III.    Streever's Objectively Reasonable Self-Censorship Due to the Outstanding Warning Is Ongoing, Irreparable Harm. ............................17

    IV.    The Balance of the Equities and Public Interest Favor a Preliminary Injunction. ................................................................17

    V.    Goodwin's Declaration and Recent Developments Further Militate Against Transfer. ..........................................................18

CONCLUSION .................................................................................................................... 20

i

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*,
    64 F.4th 1354 (D.C. Cir. 2023) ........................................................................................ 6

*\*Backpage.com, LLC v. Dart*,
    807 F.3d 229 (7th Cir. 2015) ..................................................................................... 11, 12

*\*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963) ............................................................................................... 5, 11, 12

*Baumgartner v. United States*,
    322 U.S. 665 (1944) ......................................................................................................... 1

*Brookens v. Am. Fed'n of Gov't Emps.*,
    315 F. Supp. 3d 561 (D.D.C. 2018) .................................................................................. 9

*Buckley v. Am. Const. Law Found., Inc.*,
    525 U.S. 182 (1999) ....................................................................................................... 11

*City of Houston v. Hill*,
    482 U.S. 451 (1987) ......................................................................................................... 1

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................................. 6, 7, 8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................................................................... 3

*Comm. in Solidarity with People of El Salvador v. Sessions*,
    705 F. Supp. 25 (D.D.C. 1989) ............................................................................... 8, 9, 17

*Comm. in Solidarity with People of El Salvador v. Sessions*,
    929 F.2d 742 (D.C. Cir. 1991) ..................................................................................... 8, 9

*FBI v. Fikre*,
    601 U.S. 234 (2024) ......................................................................................................... 9

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
    608 U.S. ___, slip op. (2026) ........................................................................................... 5

*Frederick Douglass Found., Inc. v. District of Columbia*,
    82 F.4th 1122 (D.C. Cir. 2023) ..................................................................................... 14

*Goodwin v. District of Columbia*,
    579 F. Supp. 3d 159 (D.D.C. 2022) ................................................................................ 16

*Hartley v. Wilfert*,
    918 F. Supp. 2d 45 (D.D.C. 2013) .................................................................................. 15

*Hatfill v. Ashcroft*,
        404 F. Supp. 2d 104 (D.D.C. 2005) ................................................................................. 13

*Index Newspapers LLC v. U.S. Marshals Service*,
        977 F.3d 817 (9th Cir. 2020) ......................................................................................... 6

*L.A. Press Club v. Noem*,
        799 F. Supp. 3d 1036 (C.D. Cal. 2025) ........................................................................ 7

*Laird v. Tatum*,
        408 U.S. 1 (1972) ........................................................................................................... 8

*Lash v. Lemke*,
        786 F.3d 1 (D.C. Cir. 2015) ......................................................................................... 14

*\*Media Matters for Am. v. Paxton*,
        138 F.4th 563 (D.C. Cir. 2025) ............................................................................. passim

*N.Y. Times Co. v. Sullivan*,
        376 U.S. 254 (1964) ................................................................................................. 1, 13

*\*Nat'l Rifle Ass'n of Am. v. Vullo*,
        602 U.S. 175 (2024) ....................................................................................... 11, 12, 14

Order Granting Plf.'s Mot. for Prelim. Inj., *Rosado v. Bondi*,
        No. 1:26-cv-01532 (N.D. Ill. May 5, 2026) ................................................................ 18

Order, *Kelly v. Hegseth*,
        No. 1:26-cv-00081-RJL (D.D.C. Feb. 12, 2026) .......................................................... 18

*Ortolano v. City of Nashua*,
        768 F. Supp. 3d 277 (D.N.H. 2025) .............................................................................. 13

*Packingham v. North Carolina*,
        582 U.S. 98 (2017) ......................................................................................................... 4

*Penthouse Int'l, Ltd. v. Meese*,
        939 F.2d 1011 (D.C. Cir. 1991) .................................................................................... 14

*Playboy Enters., Inc. v. Meese*,
        639 F. Supp. 581 (D.D.C. 1986) ................................................................................... 11

*Pursuing America's Greatness v. FEC*,
        831 F.3d 500 (D.C. Cir. 2016) ...................................................................................... 10

*Reading v. N. Hanover Twp.*,
        124 F.4th 189 (3d Cir. 2024) .......................................................................................... 8

*Reps. Comm. for Freedom of the Press v. AT&T*,
        593 F.2d 1030 (D.C. Cir. 1978) ...................................................................................... 4

*Robles v. Aransas Cnty. Sheriff's Dep't*,
No. 2:15-CV-495, 2018 WL 1932742 (S.D. Tex. Apr. 23, 2018) .................................... 13

*Rosado v. Bondi*,
831 F. Supp. 3d 685 (N.D. Ill. Apr. 17, 2026) ...................................................... 4

*Russoli v. Salisbury Twp.*,
126 F. Supp. 2d 821 (E.D. Pa. 2000) ................................................................. 16

*Sanders v. District of Columbia*,
85 F. Supp. 3d 523 (D.D.C. 2015) ..................................................................... 16

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ................................................................................. 3, 7

*Twitter, Inc. v. Paxton*,
56 F.4th 1170 (9th Cir. 2022) ...................................................................... 3

*United States v. City of Portland*,
No. 3:12-CV-02265-SI, 2026 WL 2137873 (D. Or. July 24, 2026) .................................. 4

*United States v. Southern Poverty Law Ctr.*,
No. 2:26-cr-139 (M.D. Ala. Aug. 7, 2026) ......................................................... 9

*Williams v. GEICO Corp.*,
792 F. Supp. 2d 58 (D.D.C. 2011) .................................................................. 20

*Zieper v. Reno*,
111 F. Supp. 2d 484 (D.N.J. 2000) ................................................................. 8

## Statutes

18 U.S.C. § 1001 ................................................................................... 16

## Other Authorities

Decl. of Robert Piepiora,
*Rivera v. Doe*, No. 4:25-cv-13850-MRG (D. Mass. Apr. 3, 2026) ................................. 19

Hannah Critchfield & Shane Shifflett,
*How ICE Is Weaponizing Social Media Against Its Critics*, Wall St. J. (Aug. 3,
2026), http://on.wsj.com/3TDOMWz ............................................................. 7, 18, 19

Homeland Security (@DHSgov),
X (July 6, 2026, 3:06 PM) [perma.cc/Q8MY-Z9RD] ............................................... 4, 9, 15

U.S. Immigration & Customs Enforcement,
Headquarters Offices [https://perma.cc/EM3K-NLRA] ............................................ 20

U.S. Immigration & Customs Enforcement,
Office of Governance and Privacy [perma.cc/8RHA-5WBF] ....................................... 20

**INTRODUCTION**

This was no run-of-the-mill interview concluding with a polite "thanks for your time." ICE waited five months after Streever criticized its then-Acting Director, then deployed agents to New York to track down Streever to deliver a prewritten "Warning Notice" that sought no information, only Streever's signature confirming the message was received. Defendants concede ICE responded to protected political speech with a formal demand that Streever "discontinue" exercising that First Amendment right, invoking felony statutes and the prospect of "federal and state prosecution," and promising ICE officials will take his "[r]eceipt" of their warning into future "consideration." Defs.' Br. at 24 (ECF No. 20); Verified Compl. ¶ 80, Ex. 2 (ECF No. 1-2). Even now, ICE's chilling "Warning Notice" remains in place, despite Defendants claiming their investigation is closed and declining to articulate any theory as to why Streever's email was threatening. In fact, Defendants argue they have every right to issue vague and threatening notices to Americans who speak their minds about DHS and ICE policies. Defs.' Br. at 1, 25–26.

That's cold comfort for a layperson told by armed federal agents, in writing, that his protected speech might land him in prison. Even worse, it betrays our "profound national commitment" to a public discourse that is "uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Participating in that discourse is one of the "prerogatives of American citizenship." *Baumgartner v. United States*, 322 U.S. 665, 673–74 (1944). And the freedom to criticize even the lowest beat cop—let alone one of the Nation's chief law-enforcement officials—without having to fear arrest is how we "distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987).

Make no mistake: A society that tolerates ICE's policy—sending armed agents to the doors of those who speak their minds to hand out formal demands they "discontinue" exercising their rights—is a police state. That coercive conduct steps beyond any pretense of a bona fide

1

investigation and squelches protected speech. For the Government to maintain its actions are constitutional and unchallengeable is outlandish—and dangerous. In light of ICE's escalating campaign to target critics, Defendants would have our legal system leave Americans without recourse as ICE empowers its agents to dole out chilling "Warning Notices" nationwide.

The First Amendment prohibits the government from using intimidation tactics and threatening consequences for protected speech. This Court should uphold that vital protection by enjoining ICE's continued efforts to chill protected speech.

## ARGUMENT

Streever satisfies each preliminary-injunction requirement. The outstanding Warning Notice and his present self-censorship establish standing and reflect irreparable harm. Standing intact, Streever is likely to succeed on the merits of both of his First Amendment causes of action, as the Warning Notice, serving no genuine investigative purpose, is unconstitutionally coercive and objectively chilling of protected political speech.

**I.      Plaintiff Streever Has Established Standing Due to the Present, Concrete, and Objective Harms Defendants' Conduct Is Causing Him.**

ICE's unwithdrawn Warning Notice causes present, concrete, and objective harm. That ongoing injury and, independently, the objectively reasonable risk of renewed action each establish standing and continue to present a live controversy.

**A.      Defendants' conduct, including the Warning Notice, is causing ongoing harm, satisfying the injury-in-fact requirement for standing.**

Injury-in-fact lies given that ICE has neither withdrawn nor disavowed the Warning Notice, which foreshadows criminal consequences and says ICE officials will take the Notice into "consideration" if Streever "continue[s]" speech ICE deems threatening. Verified Compl. ¶ 80, Ex. 2. That refusal to withdraw the Warning Notice makes Defendants' framing of this case as one involving only future risk both wrong and irrelevant. Regardless of their flimsy claim that ICE

2

"states" its investigation ended[1] and professes not to "contemplate" issuing him another warning (Defs.' Br. at 16, 20), the Warning Notice looms over Streever and his First Amendment rights.

Defendants' message could not be clearer: We are watching how you express yourself, so tread lightly. Those tactics are causing Streever to self-censor *now*—a present injury that establishes standing. Verified Compl. ¶¶ 96, 108–113.

Even if DHS withdrew the Warning Notice, Streever would have standing based on future injury. ICE's increased social media surveillance, its recent targeting of Streever, and its authorization of Warning Notices in response to protected speech show a "substantial risk the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). And that's enough to show Article III standing.

### 1.    The investigation and unwithdrawn Warning Notice are causing continuing, present adverse effects.

*Media Matters for America v. Paxton* confirms that Streever's present harm is an injury-in-fact. In *Media Matters*, the D.C. Circuit held that "present, concrete, and objective harms" from government action satisfy that requirement. 138 F.4th 563, 579 (D.C. Cir. 2025). "[S]elf-censorship may count as an injury in fact," *id.* at 582 (discussing *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1174–75 (9th Cir. 2022)), and "current self-censorship" is an "ongoing adverse effect[,]" *id.* at 585.

Like the plaintiffs in *Media Matters*, Streever has "reasonably altered [his] behavior." *Id.* at 581. Although he wants to "continue[] to engage in expression" critical of ICE, he has actually "self-censored some speech on social media, including to friends and others online, out of concern that a remark may be misconstrued or trigger continued harassment." Verified Compl. ¶¶ 108, 110,

---

[1] Defendant Henry provided a "report" to "management" to "serve as a closing report," but Defendants do not provide it. Goodwin Decl. ¶ 13 (ECF No. 20-1).

113. Because social media *is* a primary means for political engagement, *see Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (recognizing social media as among "the most important places ... for the exchange of views"), Defendants' conduct imposes a special burden on Streever's speech and his present self-censorship establishes standing under *Media Matters*.

Defendants treat one fact in *Media Matters*—the civil investigative demand ("CID")—as a prerequisite to standing. Defs.' Br. at 18–20. But the CID was only one part of the government's conduct in *Media Matters*. 138 F.4th at 581 (describing an investigation, a press release, and the CID). As the D.C. Circuit recognized, investigative tools range from "observatory" techniques to more speech-deterring "proscriptive" actions. *See id.* at 580 (quoting *Reps. Comm. for Freedom of the Press v. AT&T*, 593 F.2d 1030, 1064 (D.C. Cir. 1978)). Defendants' coercive Warning Notice and retaliatory tactics have caused Streever a First Amendment injury, perhaps even more wantonly than the state's retaliatory acts in *Media Matters*.

Defendants all but ignore the Warning Notice in their analysis of *Media Matters*, even though it is the CID's most relevant analogue. Defs.' Br. at 18–20.[2] Both instruments set the stage

---

[2] Defendants' analysis also omits DHS's public statements condemning Streever's speech as among the "8,000% increase in death threats" to ICE. *See* Homeland Security (@DHSgov), X (July 6, 2026, 3:06 PM), https://x.com/DHSgov/status/2074208454974267678 [perma.cc/Q8MY-Z9RD]. And they claim DHS's post about this lawsuit has nothing to do with Streever. Defs.' Br. at 7–8. That interpretation would render inexplicable the tweet's comment, conspicuously omitted from Defendants' brief, that "we do not comment on any ongoing investigations." *See id.*

Like the condemnatory press release in *Media Matters*, DHS's statements are part of the campaign to discourage Streever—and others like him—from speaking out. *See Media Matters*, 138 F.4th at 581. Worse still, DHS's tweet about Streever, *supra*, ominously invokes (again) the specter of criminal liability, warning that "ANYONE" who "threatens our law enforcement officers will face the consequences." Courts are increasingly recognizing that these social media posts reflect retaliatory intent and are not without legal consequence. *See, e.g., United States v. City of Portland*, No. 3:12-CV-02265-SI, 2026 WL 2137873, at *6 (D. Or. July 24, 2026) ("Portland: It's FO time. Buckle up" was "neither language nor tone of a good faith investigation" and instead "exhibits all the hallmarks of a threat and attempted intimidation"); *Rosado v. Bondi*, 831 F. Supp. 3d 685, 691 (N.D. Ill. Apr. 17, 2026) (Sec. Noem's tweet that "We will prosecute those who dox our agents to the fullest extent of the law" was a "thinly veiled" threat).

4

for continued government action, but the Warning Notice is expressly proscriptive, not inquisitory: it solicits no information and instead warns Streever against "continu[ing] to be involved" in "criminal activities." Verified Compl. ¶ 80, Ex. 2. Its threat of criminal liability is graver—and more chilling—than the civil demand in *Media Matters*, which at least provided pre-enforcement avenues to challenge it. *See Media Matters*, 138 F.4th at 580 (explaining that "observatory" inquiries are less likely to chill than "proscriptive" actions).

Streever has no such avenue. He must endure the Warning Notice hanging over his freedom to criticize his government. And as the Supreme Court just affirmed, an official demand threatening penalties can injure expressive rights even if the government has yet to act on it. *First Choice Women's Res. Ctrs, Inc. v. Davenport*, 608 U.S. ___, slip op. at 12, 15 (2026). That threat alone chills: "[T]he value of a sword of Damocles is that it hangs—not that it drops." *Id.* at 15 (citation omitted); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) ("People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around."). Worse yet, Streever has no way to predict what speech will trigger ICE's vague "consideration" and cause the sword to drop.

Even were the Warning Notice alone not enough to establish injury-in-fact, standing considers the cumulative effect of the government's conduct. *Media Matters*, 138 F.4th at 581. Defendants' broader conduct—their unannounced visits, phone calls, tracking of Streever's movements, public announcements implying he committed a felony, and the formal Warning Notice—are collectively causing him cognizable injury. Verified Compl. ¶¶ 71–106 & Ex. 2.

For these reasons, Defendants' pre-*Media Matters* cases do not move the needle. Defs.' Br. at 12–18. Defendants' cited cases are not about present and ongoing injuries like Streever's; instead, each is about the absence of a reasonable likelihood of repetition, showing the plaintiffs'

5

self-censorship ahead of *future* action was not objectively reasonable. On the other hand, Streever's injuries are present and ongoing, under a current threat, establishing an injury-in-fact.

### 2.    Streever also has standing under Defendants' future-injury theory.

Even if proceeding on Defendants' argument about future harm, Streever would still have standing because there is a very real risk that ICE *will* repeat its conduct, and the authorities Defendants cite show why. Start with *Lyons*, which Defendants say "controls the outcome of this case." Defs.' Br. at 13–14 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 97–98, 105, 108–09 (1983)). To start, *Lyons* itself excepted cases with "continuing, present adverse effects" from its holding. *Id.* at 102. And *Lyons* is about speculative future injury based on past excessive force, not one involving continuing First Amendment coercion and retaliation. *Id.* at 105–06. Thus, it does not control Streever's claims. *See, e.g.*, *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1362–63 (D.C. Cir. 2023) (distinguishing *Lyons* in holding "continuing effects" of prior viewpoint discrimination "are sufficient to give [plaintiff] standing").

In First Amendment cases, an objectively reasonable chill is a continuing injury sufficient to establish standing "so long as the chilling effect is not based on a fear of future injury that itself is too speculative to confer standing." *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 826 (9th Cir. 2020) (cleaned up) (applying *Lyons* and recognizing the "nature" of First Amendment cases differs from *Lyons*'s substantive due process interests). *Media Matters* likewise treats present impairment of speech as supporting standing and irreparable harm. 138 F.4th at 583. So while the *Lyons* plaintiff could not establish standing on the merely speculative possibility he might "again be stopped" by police and that an officer would then "illegally choke him into unconsciousness without any provocation," *Lyons*, 461 U.S. at 105–06, Streever faces no such obstacle here, as the continuing effects of Defendants' tactics—which chill his speech—suffice for standing, *Anatol Zukerman & Charles Krause Reporting*, 64 F.4th at 1362–63.

Streever also satisfies *Lyons*'s future-injury framework on its own terms. *Lyons* held standing lies where the plaintiff can show a future repetition of his own conduct and that the government has "authorized" its agents to respond in the same manner. 461 U.S. at 105–06. Streever intends to resume the criticism that prompted ICE's response, satisfying *Lyons*'s requirement that he "would" engage in future conduct. *See id.* at 105–06; Verified Compl. ¶¶ 96, 108–113. And OPR Assistant Director Goodwin confirms ICE officers "may also issue a Warning Notice letter" in response to protected speech. *See* Goodwin Decl. ¶ 6. That is all the "authoriz[ation]" *Lyons* requires. *Lyons*, 461 U.S. at 106; *see also Driehaus*, 573 U.S. at 158–59 (existence of a "credible threat" of government action supports standing).

What's more, Streever can also show he "might be realistically" subjected to the same conduct. *Lyons*, 461 U.S. at 106. For one, the Warning Notice itself forecasts future OPR decisions based on Streever's receipt of it. Verified Compl. ¶ 80, Ex. 2. And ICE has ramped up its efforts to target speech like Streever's. The *Wall Street Journal* reports that OPR has "spearheaded an initiative to dramatically expand the agency's ability to monitor online critics and potential threats," such that "[t]eams of contractors now scour the internet using sophisticated surveillance tools to find commentary that the agency regards as potentially dangerous."[3] So if Streever talks, ICE will listen; the Warning Notice proves he is squarely on its radar. And while the plaintiff in *Lyons* could "avoid further injury by 'avoid[ing] … illegal conduct,'" Streever engages in wholly "innocent activities" by exercising his First Amendment rights. *L.A. Press Club v. Noem*, 799 F. Supp. 3d 1036, 1060 (C.D. Cal. 2025), *aff'd in part*, 171 F.4th 1179 (9th Cir. 2026).

---

[3] Hannah Critchfield & Shane Shifflett, *How ICE Is Weaponizing Social Media Against Its Critics*, Wall St. J. (Aug. 3, 2026), http://on.wsj.com/3TDOMWz.

7

But that makes no difference to ICE: It insists it has the power to act against Streever's future speech, even though Streever seeks only injunctive relief from adverse action in response to *protected* speech. *See* Proposed Order ¶¶ 1–2 (ECF No. 9-3). All of that both makes Streever's self-censorship a "present, concrete, and objective" injury, *Media Matters*, 138 F.4th at 579, and demonstrates the "realistic" possibility of a renewed investigation, *Lyons*, 461 U.S. at 106.

Defendants' remaining cases, predating *Media Matters*, involved no objectively reasonable basis for self-censorship, as the plaintiff in each faced no realistic possibility of further government conduct. *See, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 10, 13–14 (1972) (the "mere existence, without more" of government data-gathering leaves only a "subjective chill" and does not establish "specific present objective harm or a threat of specific future harm").[4] Streever faces both continuing harm from the outstanding Warning Notice and a reasonable possibility of repetition and accordingly has standing here.

## B.    Defendants' closure of an investigative file does not moot the case.

Defendants' mootness argument that largely mirrors their standing argument fails for the same reasons. Defs.' Br. at 20–23. Standing is "distinct" from mootness because it asks whether a controversy existed "at the time the litigation is commenced, while mootness considers whether the requisite controversy continues to exist." *Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp.

---

[4] *See also* Defs.' Br. at 14–18 (citing *Zieper v. Reno*, 111 F. Supp. 2d 484, 489 (D.N.J. 2000) ("highly unlikely" DOJ program targeting threats about the Millennium would again sweep up plaintiffs' videos, as program had ended and Millennium passed); *Reading v. N. Hanover Twp.*, 124 F.4th 189, 197 (3d Cir. 2024) (school board member unlikely to face censorship by school district after resigning and withdrawing children from the district); *Comm. in Solidarity with People of El Salvador v. Sessions*, 705 F. Supp. 25, 25–27 (D.D.C. 1989) ("*CISPES I*"), *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744–45 (D.C. Cir. 1991) ("*CISPES III*") (plaintiffs concerned government files would impair their government employment prospects were unlikely to be hired anyway, as none expressed any interest in seeking government employment)).

3d 561, 567–68 (D.D.C. 2018). When Streever sued, DHS confirmed a controversy existed by it publicly suggesting its "investigation" remained "active."[5] And even if ICE closed its investigative file *after* Streever sued—something on which it offers scant evidence—that does not moot this case or Streever's request for injunctive relief.

Above all, ICE has not withdrawn the Warning Notice at the root of this First Amendment dispute and that is stopping Streever from criticizing ICE again. Thus, a live controversy remains. Simply put, Defendants can't moot that injury with a mere declaration—reciting a memo they do not show—asserting ICE has closed an investigation and has "no plans" to contact Streever over his critical email to Director Lyons again, especially when Streever intends to continue his criticism. *See FBI v. Fikre*, 601 U.S. 234, 242 (2024).

"[N]one of that speaks to whether the government might" investigate him again "if he does the same or similar things in the future." *Id.* Nor does it prevent the government from reopening its investigation. *See United States v. Southern Poverty Law Ctr.*, No. 2:26-cr-139 (M.D. Ala. Aug. 7, 2026) ("As the Government notes, investigations are routinely opened, shut, and opened again for myriad, proper reasons."). Here, the government has not "publicly discredited" its investigation "in its entirety," adopted policies to prevent recurrence, or restricted access to its investigation records. *CISPES* I, 705 F. Supp. at 26–27. If it had, then perhaps mootness would be a closer call. *CISPES III*, 929 F.2d at 744.

But Defendants have done none of that. They defend their conduct now, have not withdrawn the Warning Notice, and even say their extreme tactics are routine, even "critical." Defs.' Br. at 1–3, 21–24, 25, 35–37; Goodwin Decl. ¶¶ 6, 15. But nothing about tracking down an

---

[5] *See* Homeland Security (@DHSgov), X, *supra* note 2.

American and serving him with threats of criminal penalty because he criticized a federal official should be routine. It's a brazen First Amendment violation, ripe for this Court's intervention.

## II.     Streever Is Likely to Succeed on Each of His Two First Amendment Claims.

Defendants do not contest that the First Amendment protects Streever's email, yet their opposition brief fails to carry their difficult burden to show their response—to protected political speech—survives First Amendment scrutiny. First, ICE's instruction that Streever "discontinue" protected speech or risk future "consideration" of whether his speech is a felony is plainly coercive, so Streever is likely to succeed on his first cause of action. Verified Compl. ¶ 80, Ex. 2. And rather than analyze that claim, Defendants rely on a single premise, asserting both Streever's coercion and retaliation claims fail for lack of subjective retaliatory intent. But coercion does not require retaliatory intent and, in either event, Defendants' Warning Notice and belated, fruitless "investigation"—in which they learned nothing—provide both direct and circumstantial evidence of retaliatory intent.

### A.     Defendants concede the First Amendment protects Streever's speech, shifting the burden to the government.

Defendants "do not dispute that Streever's email to Lyons put words to his disagreements with a current administration official," political speech squarely within the First Amendment's shelter, or that it triggered the response that led to this case. Defs.' Br. at 24. That concession shifts the burden to Defendants to demonstrate their response withstands constitutional scrutiny, as the "burdens at the preliminary injunction stage track [those] at trial" in a First Amendment case, and those always rest with the government. *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 510 (D.C. Cir. 2016) (citation omitted). But that concession also undermines their ability to carry their burden, as it means they were never investigating an unprotected true threat but core political speech, where First Amendment vigilance is "at its zenith." *Buckley v. Am. Const. Law Found.,*

10

*Inc.*, 525 U.S. 182, 186–87 (1999) (internal quotation marks omitted). Worse, they issued a formal "warning" against continued exercise of that fundamental right. Defendants' concession thus effectively admits Streever is likely to succeed on the merits.

###### B.        Streever is likely to succeed on his First Amendment coercion claim.

Defendants barely engage with the ample precedent establishing that the First Amendment prohibits the government from coercing people into silence, *see* Mot. at 23–26 (ECF No. 9-1), let alone explain why their tactics are not unconstitutionally coercive. Instead, they insist the coercion claim is "redundant" and "duplicative" of the retaliation claim. Defs.' Br. at 24. That is wrong.

First Amendment retaliation and coercion are analytically distinct, and each employs a different inquiry. The coercion inquiry does not concern retaliatory animus, as Defendants claim. *Id.* Rather, it asks objectively whether a reasonable speaker, viewing the government's conduct in context, would understand it as threatening adverse action against protected speech. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024). Any person would fear the Warning Notice, accompanied by federal agents pursuing them across New York, was a threat of consequences.

###### 1.        Defendants' tactics and Warning Notice are coercive actions that violate the First Amendment.

Defendants make no attempt to contest the ample precedent establishing why their tactics are unconstitutionally coercive. *See* Mot. at 21–23 (citing *Bantam Books,* 372 U.S. at 67; *Vullo*, 602 U.S. at 188–91; *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230, 235, 238–39 (7th Cir. 2015); *Playboy Enters., Inc. v. Meese*, 639 F. Supp. 581, 582–88 (D.D.C. 1986)). They fail even to engage with the guideposts the Supreme Court reaffirmed for First Amendment coercion claims. *Vullo*, 602 U.S. at 189–90. In any case, the *Vullo* factors lopsidedly favor Streever.

The "word choice and tone," *id.*, of the formal Warning Notice, which uses bolded text to invoke a range of felony offenses and invokes "federal and state prosecution," are intended to scare

11

recipients. That is the point—and it's why Defendants repeatedly describe it as a "prophylactic." Defs.' Br. at 1, 4. The Warning Notice also expressly invokes the "existence of regulatory authority," satisfying the second *Vullo* factor. *Vullo*, 602 U.S. at 189–90. Streever "perceived [it] as a threat." *Id.* at 189–90. And it "refers to adverse consequences," raising the prospect of future law-enforcement "consideration." Its purposeful vagueness—gesturing at thousands of potential felony offenses and providing no context for ICE's future "consideration"—only heightens its chilling effect, as recipients must guess whether their speech will trigger that "consideration."

Defendants nonetheless assert investigations are not adverse actions. That may be true of some "observatory" investigations or a purely inquisitive knock-and-talk, but *how* officers conduct an investigation matters. *See Media Matters*, 138 F.4th at 580 (distinguishing "observatory" tactics from "proscriptive" ones). To that end, "proscriptive" actions, like those here, are more likely to amount to adverse action. *Id.* In any case, the Warning Notice, which solicits no information beyond a signature, is not "observatory," let alone investigative. It is purely proscriptive (or, as Defendants put it, "prophylactic"), leaving no doubt about its coercive nature. *See* Defs.' Br. at 1.

That places it in the same family as the written warning "notices" distributed to booksellers in *Bantam Books*, the warning letters sent to sophisticated credit card companies in *Backpage*, and the "guidance" in *Vullo*. *Bantam Books, Inc.*, 372 U.S. at 62–63 & n.5; *Backpage.com, LLC*, 807 F.3d at 231–32; *Vullo*, 602 U.S. at 183–84. That financial companies and retailers could reasonably read those letters as threatening adverse action only underscores why Streever, a layperson, reasonably fears the same from the more ominous Warning Notice.

Rather than address these coercion cases, Defendants rely on inapplicable retaliation cases. They invoke *Ortolano v. City of Nashua*, but that case involved only a mundane reminder conveying "one private party's wish not to have contact with another private party," after the

12

gadfly plaintiff began contacting city staffers outside of work. 768 F. Supp. 3d 277, 280–82 (D.N.H. 2025). That reminder served to redirect those communications back to the workplace, not to silence them. *Id.* Unlike *Ortolano*, Streever's case does not involve private parties—it concerns political speech about one of the most powerful—and controversial—officials in our government, implicating weightier First Amendment concerns. *See, e.g.*, *N.Y. Times Co.*, 376 U.S. at 270 (citing our "profound national commitment" to "uninhibited, robust, and wide-open" discourse on public affairs). And *Ortolano* involved an informal, accurate admonishment about the time, place, and manner of speech, not its content. ICE's "Warning Notice" targets wholly protected speech and falsely asserts it "may" be a felony offense. Verified Compl. ¶ 80, Ex. 2. In characterizing protected political speech as felonious, the Warning Notice deters that protected speech entirely.

Nor is this case similar to the unreported district court case in *Robles v. Aransas County Sheriff's Department*, where the plaintiff's "unreasonably literal interpretation" of a deputy's "hollow or trivial" threat ("If I'm called back again here, I'm going to put you all in jail") supposedly deterred him from filing police reports. No. 2:15-CV-495, 2018 WL 1932742, at *5 (S.D. Tex. Apr. 23, 2018); *see* Defs.' Br. at 26. The Warning Notice demands literal compliance; it is not an offhand remark attempting to deter frivolous 911 calls. And the other authority Defendants offer, *Hatfill*, involves no warning or admonishment about continuing to speak. Defs.' Br. at 26; *see Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 117–19 (D.D.C. 2005).

Unlike *Bantam Books*, *Vullo*, and *Backpage*, none of Defendants' cases asks whether an official communication would reasonably be understood as a threat of adverse action aimed at suppressing speech. Their retaliation cases thus have little bearing on the coercion claim.

### 2. Coercion claims do not require retaliatory animus.

Defendants do not dispute that their actions arise solely from the content of Streever's email, as the Warning Notice provides expressly. Defs.' Br. at 24; Verified Compl. ¶ 80, Ex. 2

13

("OPR has identified an email … which it has reason to believe may constitute a violation of Title 18"). Instead, Defendants improperly import the intent requirement from First Amendment retaliation doctrine into Streever's First Amendment coercion claim, which they disregard as "duplicative." Defs.' Br. at 24. But in a First Amendment coercion case, the government's motive "is not analytically a separate factor" and is in fact "irrelevant." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1017 (D.C. Cir. 1991); *see also Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1144–45 (D.C. Cir. 2023). And while retaliatory motive is a subjective inquiry, *Vullo* confirms that coercion cases instead apply an "objective inquiry" into what a reasonable recipient would perceive from the government's conduct. 602 U.S. at 191; *see also id.* at 203–04 (Jackson, J., concurring) (distinguishing plaintiff's censorship and retaliation theories and explaining that "retaliatory animus" is part of the latter's causation inquiry). In any event, by failing to adequately contest the substance of Streever's coercion claim, Defendants have waived the argument. *See, e.g.*, *Lash v. Lemke*, 786 F.3d 1, 10 (D.C. Cir. 2015) (holding First Amendment claim "doomed" by failure to develop it through "meaningful argument").

## C.    Streever is also likely to succeed on his First Amendment retaliation claim.

What Defendants paint as a routine investigation is one in name only. On the pretext that an email Defendants concede is protected political speech was somehow a threat of violence against a senior government official, ICE launched its investigation after inexplicably waiting five months, then closed it without accomplishing any of its stated objectives—that is, other than to issue a Warning Notice that nakedly demands Streever "discontinue" his protected speech. That stated goal of silence and the dubious circumstances of the "investigation" provide both direct and circumstantial evidence of causation that make Streever likely to succeed on his retaliation claim.

### 1.    Defendants' conduct and Warning Notice satisfy the objective "ordinary firmness" standard.

Defendants designed the Warning Notice to deter speech. After reciting Streever's protected speech, it directs him to "discontinue" it, then invokes the ominous prospect of felony prosecution. Verified Compl. ¶ 80, Ex. 2. Federal agents hand-delivered the Warning Notice to his wife during an unannounced visit, then made multiple phone calls and twice more tried to confront Streever—at an airport and a hotel. Goodwin Decl. ¶¶ 11–12. And when journalists reported on the matter, DHS—though claiming here it had closed its investigation—instead cultivated a chilling effect by (at least) implying the investigation was active. As shown in *Hartley* (which Defendants do not address), even "brief" encounters and a verbal warning from an officer satisfy ordinary firmness. Mot. at 27–28 (citing *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 47–48, 53–54 (D.D.C. 2013)). Defendants' written warning, statements, and unannounced visits do, as well.

### 2.    The fruitless investigation does not negate retaliatory causation.

Both direct and circumstantial evidence of retaliatory motivation establish the causation prong of Streever's retaliation claim. First, Defendants do not dispute that Streever's email was the but-for cause of the response. *See* Defs.' Br. at 24; Verified Compl. ¶ 80, Ex. 2. Second, DHS's public statements both (1) linked Streever's email to "threats" of violence against ICE, saying "ANYONE" who does so deserves "consequences"; and (2) at least strongly suggested DHS was conducting an active investigation, which it now claims it had closed. Homeland Security (@DHSGov), *supra* note 2. That denunciation and false claim show retaliatory intent to chill Streever's speech.

Streever's circumstantial evidence only underscores why he is also likely to succeed on his retaliation claim. That is especially so in that "direct evidence of retaliatory animus is not required" for a "reasonable inference that defendants lacked a non-retaliatory motive" for their conduct.

15

*Goodwin v. District of Columbia*, 579 F. Supp. 3d 159, 174–75 (D.D.C. 2022). Circumstantial evidence may include Defendants' knowledge of the speech, the timing of their response, and the unusual nature of their conduct. *Sanders v. District of Columbia*, 85 F. Supp. 3d 523, 535–37 (D.D.C. 2015). Here, Defendants concede Streever's email was protected speech. That is a strong indication they were not, as the Warning Notice implies, investigating a threat to murder a federal official. Instead, Defendants knew the speech was protected—or, at best, recklessly disregarded its protected status—yet still pursued Streever and threatened criminal penalties.

The investigation's delayed timing and lack of results also point to retaliatory intent because they undermine Defendants' post hoc rationalization. *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 855–56 (E.D. Pa. 2000) (holding that an unexplained three-week delay in filing charges could suggest retaliation where the stated reason did not plausibly require it). In *Sanders*, for example, the fact that the employer "did not actively pursue the investigation" into the plaintiff's employment "until months later" was reason to doubt the authenticity of the "abnormal" investigation. *Sanders*, 85 F. Supp. 3d at 536. That is all the more so here, where ICE waited five months before investigating Streever for a supposed threat of violence against a senior government official. Defendants still have not explained that delay.

And the claimed "purpose" of the investigation—to "confirm that Mr. Streever was the actual author of the email," to "assess" his "intentions" five months later, and to "assess" the "veracity" of his "statements"[6]—strains credulity. Goodwin Decl. ¶ 10. Defendants' investigation accomplished none of these goals before they closed it. And they concede now that "Streever did not present an actual threat," but say that was "a fact unknown prior to the investigation." Defs.'

---

[6] Worse still, federal agents pop-quizzing Americans about emails they sent months earlier set traps for the unwary, who risk federal false-statement charges if they err in answering a federal investigator testing the "veracity" of their statements. *See* 18 U.S.C. § 1001; Goodwin Decl. ¶ 10.

Br. at 3. Defendants offer no explanation for how their investigation determined Streever was not an "actual threat." Defs.' Br. at 3. That is because it was an investigation in name only; Defendants deployed armed agents across state lines to make sure he received the speech-chilling Warning Notice, not to learn whether Streever posed a threat.

## III.    Streever's Objectively Reasonable Self-Censorship Due to the Outstanding Warning Is Ongoing, Irreparable Harm.

Defendants claim Streever has no irreparable injury because ICE "states" it does not currently "contemplate any further investigation" or plan to send a second Warning Notice. Defs.' Br. at 2, 32–33. As with their standing and merits analyses, that ignores how the government's conduct and Warning Notice have reasonably forced him to refrain from speech that might renew government interest in his past speech or trigger more responses by ICE. That current self-censorship, as *Media Matters* held, is an ongoing, irreparable First Amendment injury, 138 F.4th at 585, and the requested injunction would redress it.

## IV.    The Balance of the Equities and Public Interest Favor a Preliminary Injunction.

Defendants dispatched federal agents to confront an American over what they concede is political speech squarely protected by the First Amendment. Defs.' Br. at 24. Those interests, central to our national commitment to unfettered expression, drastically outweigh any government interest in hobbling that speech. Struggling against that weight, Defendants offer inconsistent arguments. They claim at once that the case is moot because they have no interest in continuing to pursue Streever. Defs.' Br. at 20–21. In the next breath, they protest that an injunction will suffocate their "investigatory prerogative." *Id.* at 35 (citing *CISPES I*, 705 F. Supp. at 30).[7]

---

[7] *CISPES*' caution against limiting investigations rested on a record showing "every indication" officials had "made a good-faith effort to undo the ill effects of the investigation." *CISPES I*, 705 F. Supp. at 30. ICE has not.

17

The injunction Streever seeks would do no such thing because it narrowly targets the specific harm Defendants are causing. The proposed order offers three narrow options, each restraining only retaliatory *acts*, not observational investigation. Proposed Order ¶¶ 1–3. Each limits only the unconstitutional *response* to protected speech. *Id.* None would restrain a bona fide investigation into an unprotected "true threat"—the government need only, as the First Amendment already requires, make a threshold determination that the speech is unprotected. The narrowest option only prohibits further action in reliance on the Warning Notice. *Id.* ¶ 3.

Those provisions narrowly remedy the harm caused by the vagueness of the government's own conduct and warnings, which broadly gesture at the entire "Title 18 of the U.S. Code" and future "consideration." Verified Compl. ¶ 80, Ex. 2. Recent orders take the same tack when confronting similar government conduct. *See* Order Granting Plf.'s Mot. for Prelim. Inj., *Rosado v. Bondi*, No. 1:26-cv-01532 (N.D. Ill. May 5, 2026), *available at* https://bit.ly/iceorder; Order, *Kelly v. Hegseth*, No. 1:26-cv-00081-RJL (D.D.C. Feb. 12, 2026), *available at* https://bit.ly/doworder. That Streever's proposed order would restrain these defendants and any official in "active concert" does not render an injunction "overbroad." Defs.' Br. at 35. That language comes directly from Rule 65. Fed. R. Civ. P. 65(d)(2)(C).

## V.    Goodwin's Declaration and Recent Developments Further Militate Against Transfer.

Defendants use their opposition to rehash their motion to dismiss or transfer. Defs.' Br. at 11; *see* Defs.' Mot. to Dismiss or Transfer (ECF No. 17). As Streever has explained, venue is more than appropriate in this District. Plf.'s Opp. to Mot. to Dismiss or Transfer (ECF No. 19) at 9–19. And recent *Wall Street Journal* reporting proves Streever's point, as it identifies Washington, D.C., as the focal point of a broader "dragnet" targeting online critics, including Streever.[8]

---

[8] *Critchfield & Shifflett*, *supra* note 3.

Goodwin's declaration also indicates that significant events occurred here. For example, Streever's email "was forwarded to OPR because it was determined" it "had potential threatening undertones," then it "was assigned" to Henry. Goodwin Decl. ¶¶ 7–9. Goodwin's passive-voice description obscures who made those decisions, how they made them, or why they assigned the matter to a "New York-area" agent when they did not have "any information about Mr. Streever." *Id. ¶* 7. Moreover, Goodwin says ICE policy authorizes officers to "issue a Warning Notice" during investigations, *id.* ¶ 6, indicating ICE leadership has made policy determinations about when, how, and why it may issue Warning Notices in response to protected speech.

As to their transfer arguments, Defendants' opposition disproves their claim that this controversy is local to the Western District of New York. For one, it reveals that Defendants Henry and Brodie work in Jersey City, New Jersey. Goodwin Decl. ¶¶ 8, 14. That leaves Defendant Pitts, a JFK airport duty agent briefly enlisted to assist Henry, as the lone New York defendant. *Id.* ¶ 12. The parties and relevant events thus span six federal districts, four states, and Washington, D.C. Consider what else their concession proves: Jersey City is closer to Washington, D.C. than Rochester, New York.[9] If anything, the Western District of New York is a *less* convenient court.

Recent reporting by the *Wall Street Journal* reinforces that officials in Washington, D.C., are leading a new nationwide "program" targeting criticism and that they swept Streever into an increasingly sophisticated "dragnet."[10] That investigative report ("How ICE Is Weaponizing

---

[9] Jersey City is four hours (223 miles) by car or three hours by the Acela train to Washington, D.C., and five and a half hours (331 miles) by car or seven hours by train to Rochester.

[10] *Critchfield & Shifflett*, *supra* note 3. The report also references a declaration by an ICE official, which states that "[b]etween January 2025 and March 2026," OPR "investigated 131 cases" involving speech "directed towards ICE employees nationwide"—a number that has undoubtedly climbed as ICE devotes more resources to its campaign, as Acting Director Lyons "signed a memorandum" in March 2026 "to invest in the agency's capabilities" to respond to "emerging threats, including doxing" and "online harassment." Decl. Robert Piepiora ¶¶ 18, 45, *Rivera    v.    Doe*,    No.    4:25-cv-13850-MRG    (D.    Mass.    Apr.    3,    2026),

Social Media Against Its Critics") shows that OPR—headquartered in D.C.—is "spearhead[ing] an initiative to dramatically expand the agency's ability to monitor online critics," and that DHS's "campaign against online adversaries has been coordinated by" that Office of Professional Responsibility. The report, citing an "agency spokesperson" and "government documents," says the Homeland Security Investigations Office of Intelligence leads the program with "oversight from the ICE Privacy Office." Both operate from Washington, D.C.,[11] where this case should stay.

**CONCLUSION**

For these reasons, the Court should grant Plaintiff's motion without requiring security.

Dated: August 12, 2026                              Respectfully submitted,

                                                    /s/ Adam Steinbaugh

JT Morris, Bar No. 979772                           Adam Steinbaugh, Penn. Bar No. 326475*
FOUNDATION FOR INDIVIDUAL                            Jeffrey Zeman, Penn. Bar No. 328570*
   RIGHTS AND EXPRESSION (FIRE)                      Hannah Abbott, Penn. Bar No. 337123*
700 Pennsylvania Ave. SE, Ste. 340                  FOUNDATION FOR INDIVIDUAL
Washington, DC 20003                                   RIGHTS AND EXPRESSION (FIRE)
(215) 717-3473                                      510 Walnut St., Ste. 900
jt.morris@fire.org                                  Philadelphia, PA 19106
                                                    (215) 717-3473
                                                    adam@fire.org
                                                    jeff.zeman@fire.org
                                                    hannah.abbott@fire.org

                                                    * Admitted *Pro hac vice*.

                              *Counsel for Plaintiff*

---

https://storage.courtlistener.com/recap/gov.uscourts.mad.293320/gov.uscourts.mad.293320.18.3.pdf [perma.cc/HCT9-D64P]. A court "may consider material outside of the pleadings" on a Rule 12(b)(3) motion to dismiss. *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

[11] *See* U.S. Immigration & Customs Enforcement, Headquarters Offices, https://www.ice.gov/hsi/our-offices/hq [perma.cc/EM3K-NLRA] (describing HSI's Office of Intelligence as part of the "Washington, D.C., HSI Headquarters"); U.S. Immigration & Customs Enforcement, Office of Governance and Privacy, https://www.ice.gov/management-administration/privacy [perma.cc/8RHA-5WBF] (providing, under "How do I submit a FOIA or Privacy Act amendment request?" a Washington, D.C. address for the ICE "Privacy Office").